Maxine **MORGAN**, wife of, and Max Philpott-Hill, Plaintiffs,

v.

**AETNA CASUALTY & SURETY COM-PANY**, Defendant.

Civ. A. No. 9274.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 27, 1960.

Reed, Reed, Reed & Garvey, Floyd J. Reed, Daniel P. McIntire, New Orleans, La., for plaintiff.

Adams & Reese, St. Clair Adams, Jr., New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

Plaintiffs, husband and wife, sue Aetna Casualty and Surety Company, as the insurer of Dr. Carl Herman Weinberg, for damages allegedly resulting from malpractice. This court, after hearing the testimony adduced, makes the following findings.

### Findings of Fact

1. The plaintiff, Mrs. Philpott-Hill, became a patient of Dr. Weinberg, an obstetrician and gynecologist in the City of New Orleans, in early 1956. At that time the plaintiff was suffering from the effects of an abortion, self-induced through the use of quinine.

2. On November 11, 1958, Dr. Weinberg saw Mrs. Philpott-Hill with respect to her second pregnancy, then apparently one or two months old. Dr. Weinberg again saw the plaintiff on January 12, 1959, at which time the plaintiff was suffering from slight bleeding and cramps in the uterus. By January 19, 1959, this condition had improved.

3. On February 2, 1959, Dr. Weinberg examined the plaintiff, attempting without success to hear the fetal heart tone. Since pregnancy was then four or five months old, he was disappointed in his failure to establish definitely that the fetus was still viable. He took Mrs. Philpott-Hill into the room adjoining the examination room and told her of his concern. He also asked her to return in a week when tests would be made if the fetal heart tone was not audible at that time.

4. Mrs. Philpott-Hill was distraught by the information she had received from Dr. Weinberg and, after consultation with her husband, sought the advice of another expert in the field of female disorders, Dr. Weed of the Ochsner Clinic. Dr. Weed saw Mrs. Philpott-Hill on February 3, 1959, at which time he found that she was having a normal pregnancy. Although he too was unable to hear the fetal heart tone, that fact did not disturb him because in some pregnancies the tone is inaudible until past the fifth month. Dr. Weed continued to treat Mrs. Philpott-Hill and on June 23, 1959, she had a normal delivery of a normal child.

5. Mrs. Philpott-Hill claims that on February 2, 1959, when he was unable to hear the fetal heart beat, Dr. Weinberg told her that her child was dead, that she immediately became distraught and hysterical and has suffered emotional maladjustment since that time by reason of Dr. Weinberg's inaccurate advices.

6. Mrs. Philpott-Hill's statement that she was told by Dr. Weinberg that her baby was dead is not supported by the evidence. It is true that Dr. Weinberg expressed concern on February 2, 1959, in not hearing the fetal heart beat. It is also true that he communicated his concern to his patient. His concern was obviously predicated on the fact that Mrs. Philpott-Hill had suffered previously from the effects of an abortion and had, during this pregnancy, bleeding and uterus cramps. But in spite of his concern, the testimony that he told Mrs. Philpott-Hill that her baby was dead is incredible.

7. The truth of the matter is that at the time of the examination on February 2, 1959, Mrs. Philpott-Hill was in the high emotional state common to pregnant women. She doubtless interpreted Dr. Weinberg's concern as an indication that her baby was dead. Doubtless she jumped to that conclusion from what he said. But it is clear that Dr. Weinberg did not intend to convey that impression. He merely wanted to advise his patient of her condition, as he was required to do as a doctor, and of his concern. Perhaps, considering the patient and her emotional state, he should have been more guarded in his pronouncements.

Conclusion of Law

1. The test for malpractice in Louisiana is the same as elsewhere. Malpractice is the failure to exhibit that degree of skill, care, and judgment ordinarily exhibited by practitioners in the same specialty under similar circumstances in the same locality.[1] Here it was established by the testimony of Dr. Weed that no obstetrician, exhibiting the required degree of skill, care, and judgment under the circumstances of Mrs. Philpott-Hill's pregnancy as it existed on February 2, 1959, would have advised the plaintiff that her baby was dead. Under these circumstances, therefore, so to have done would have been malpractice.

However, as indicated above, the evidence will not support the allegation that Dr. Weinberg told Mrs. Philpott-Hill that her baby was dead. Consequently, he must be acquitted of the charge of malpractice.

---

1. See Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781, and cases therein cited at page 782.