**Rudolfo RAMIREZ, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 76–2342.

United States Court of Appeals, Ninth Circuit.

Dec. 2, 1977.

Edgar H. Hayden, Jr., of Butler & Schroeder, San Diego, Cal., for plaintiff-appellant.

Donald F. Shanahan, Asst. U. S. Atty., San Diego, Cal., for defendant-appellee.

Before BROWNING, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, ANDERSON, and HUG, Circuit Judges.

KENNEDY, Circuit Judge.

The issue in this case is whether a government physician's failure to warn of risks attendant to surgery constitutes a misrepresentation within the meaning of the Federal Tort Claims Act (the Act), so that the patient is barred from bringing suit against the United States. We consider this case en banc to reexamine our earlier decisions bearing on the question.

In July 1973, Ramirez underwent a surgical procedure called a stapedectomy, performed to alleviate a hearing problem. The procedure involves placement of a stapes prosthesis in the patient's ear. Some time after the surgery, Ramirez began to experience vertigo and a continued loss of hearing. To eliminate the condition, Ramirez underwent surgery a second time, in October 1973. The stapes prosthesis was removed. After the second operation, it was confirmed that Ramirez suffered a sensory hearing loss caused by a granuloma, a reaction to the stapes prosthesis that occurs in a small percentage of cases. He brought suit under the Act, 28 U.S.C. § 1346, contending that failure to warn him of the risks of granuloma constituted negligence on the part of his government surgeon.

The district court, relying on our earlier decisions of *Hungerford v. United States,* 307 F.2d 99 (9th Cir. 1962), and *De Lange v. United States,* 372 F.2d 134 (9th Cir. 1967), dismissed the action on the ground that a failure to warn a patient constitutes a misrepresentation within the meaning of 28 U.S.C. § 2680(h), and as such the tort is not actionable against the United States.[1] We reverse the district court's order of dismissal.

The Federal Tort Claims Act confers jurisdiction on the federal courts over "civil actions on claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Certain specified torts are excluded from coverage, however. The exclusion provisions are found in 28 U.S.C. § 2680, which pro-

---

1. In addition, the district court granted summary judgment in favor of the United States on a second count in Ramirez' complaint alleging that the government doctor had negligently performed the surgery. Ramirez does not appeal from that portion of the district court's decision, and the issue considered therein is not before us.

vides: "Section 1346(b) of this title shall not apply to . . . (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation,* deceit, or interference with contract rights." (emphasis added). Questions of interpretation under the exclusion provisions are controlled by federal law. *See United States v. Neustadt,* 366 U.S. 696, 705–06, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *United States v. DeCamp,* 478 F.2d 1188, 1191 (9th Cir. 1973); *Stepp v. United States,* 207 F.2d 909, 911 (4th Cir. 1953).

Although the legislative history of section 2680(h) is not as informative as we would like, the Supreme Court has interpreted it to mean that in enacting the exclusion provision Congress had in mind the "traditional and commonly understood" torts of negligent misrepresentation and common law deceit. *Neustadt v. United States,* 366 U.S. at 706–07, 711 n.26, 81 S.Ct. at 1300, 6 L.Ed. at 621. The Court in *Neustadt* explicitly recognized that the misrepresentation and deceit exclusions would arise most often in the course of business transactions. *Neustadt* held that the misrepresentation exclusion of section 2680(h) barred a claim by the purchaser of a home who, in reliance on a negligent inspection and appraisal by a federal housing administration appraiser, had been induced to pay more for the property than it was worth. The Court added:

> Our conclusion neither conflicts with nor impairs the authority of *Indian Towing Co. v. United States,* 350 U.S. 61 [76 S.Ct. 122, 100 L.Ed. 48], which held cognizable a Torts Act claim for property damages suffered when a vessel ran aground as a result of the Coast Guard's allegedly negligent failure to maintain the beacon lamp in a lighthouse. Such a claim does not "arise out of . . . misrepresentation," any more than does one based upon a motor vehicle operator's negligence in giving a misleading turn signal. As Dean Prosser has observed, many familiar forms of negligent conduct may be said to involve an element of "misrepre-

sentation," in the generic sense of that word, but "[s]o far as misrepresentation has been treated as giving rise in and of itself to a distinct cause of action in tort, it has been identified with the common law action of deceit," and has been confined "very largely to the invasion of interests of a financial or commercial character, in the course of business dealings."

*Id.* at 711 n.26, 81 S.Ct. at 1302, *citing* W. Prosser, Torts, § 85, "Remedies for Misrepresentation," at 702–03 (1941 ed.) *and* 2 F. Harper & F. James, Torts, § 29.13, at 1655 (1956). While the Supreme Court's comment in *Neustadt* is by itself sufficient to cause us to hold that failure to obtain informed consent from a patient does not constitute a misrepresentation within the meaning of the Act, other considerations also lead to this conclusion.

The misrepresentation exclusion presumably protects the United States from liability in those many situations where a private individual relies to his economic detriment on the advice of a government official. *See, e. g., Clark v. United States,* 218 F.2d 446, 452 (9th Cir. 1954). To expose the United States to potential liability in such situations might significantly inhibit the orderly workings of government agencies.

The legislative history of the Act shows that Congress rejected a proposed amendment that in specific terms would have retained government immunity in cases arising from the negligence of government hospital employees in rendering medical or surgical treatment. *E. g.,* S. 211, 72d Cong., 1st Sess. (1931); H.R. 5065, 72d Cong., 1st Sess. (1932), *noted in* 1 L. Jayson, Handling Federal Tort Claims, § 59.08 at 2–65. In this manner Congress evidenced its intent to provide a remedy for negligent medical performance by government personnel. *See United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Congress made no distinction between failure to obtain informed consent and other forms of malpractice, and we discern no policy reasons for believing that it intended to do so. In the absence of an express

legislative intent to the contrary, we decline to distinguish artificially between forms of medical malpractice.

The creation of strained distinctions to encompass aspects of ordinary medical malpractice within the misrepresentation exception of section 2680(h) is not justified by the language of the statute, by its history, or by *Neustadt.* The patient who suffers harm from a surgical complication that should have been described as a possible consequence of surgery when the doctor obtained the patient's consent is the victim of negligent conduct, not of an esoteric form of misrepresentation. *E. g., Fontenelle v. United States,* 327 F.Supp. 801, 802 (S.D.N.Y.1971); Annot., 45 A.L.R.3d 928, 935 (1972) (Malpractice: Physician's Liability for Injury or Death Resulting from Side Effects of Drugs Intentionally Administered to or Prescribed for Patient). The patient is in the same situation in this respect as the driver who relies to his detriment on another's misleading turn signal. *United States v. Neustadt,* 366 U.S. at 711 n.26, 81 S.Ct. at 1302, 6 L.Ed. at 624. In both instances, the injured person has relied on a form of communication, but in neither is the tort based on a misrepresentation within the meaning of section 2680(h).

The conclusion that Ramirez could not be foreclosed from his remedy under the Tort Claims Act by the misrepresentation exception of section 2680(h) would easily follow, but for the Government's reliance on two cases from our circuit: *Hungerford v. United States,* 307 F.2d 99 (9th Cir. 1962) and *De Lange v. United States,* 372 F.2d 134 (9th Cir. 1967). In *Hungerford,* the plaintiff was a Korean war veteran who sustained brain damage from combat injuries. He entered a veteran's hospital for treatment of his pain and blackouts. Because of the hospital's alleged failure to make a proper examination and tests, Hungerford's condition was diagnosed as psychosomatic illness, and he was discharged without further treatment. Several years later his brain injury was discovered and surgery performed. The district court dismissed his case on the grounds that his claim was barred by the statute of limitations and

that the misdiagnosis was a misrepresentation excluded from the Tort Claims Act by section 2680(h). We held that his claim was not time barred and that an action to recover for negligent treatment was not foreclosed by section 2680(h). Nonetheless, we stated:

A communicated diagnosis as to physical condition is a representation. See *Hall v. United States,* 10 Cir., 274 F.2d 69. An incorrect representation is a "misrepresentation" within the meaning of the statute, whether wilful or based upon negligence in ascertaining the facts represented. *United States v. Neustadt,* 366 U.S. 696, 702, 81 S.Ct. 1294, 6 L.Ed.2d 614.

307 F.2d at 102.

The proposition quoted from *Hungerford* was apparently relied on by a panel of this court in *De Lange v. United States, supra.* *De Lange* is a cryptic one-paragraph per curiam opinion which affirms a lower court judgment holding that a "communicated diagnosis" was a misrepresentation within the meaning of the exclusion provided in 28 U.S.C. § 2680(h).

*Hungerford*'s holding and its reaffirmation in *De Lange* are inconsistent with the Supreme Court's opinion in *Neustadt,* the history of section 2680(h), and the policy of the Act in allowing actions for medical malpractice. We therefore hold that the failure to warn of risks attendant to surgery as alleged in this case did not constitute a misrepresentation within the meaning of the Federal Tort Claims Act. We disapprove of the rationale of *Hungerford* and *De Lange,* and to the extent those cases are inconsistent with our holding they are overruled. It follows that Ramirez' action is not foreclosed by the exclusion provisions of section 2680(h).

■ Even though we have determined that Ramirez' action is not excluded as a matter of federal law under the Tort Claims Act, section 1346(b) requires that we look to state law to determine whether Ramirez stated a claim on which relief could be granted. *Early v. United States,* 474 F.2d 756 (9th Cir. 1973); *Epling v. United*

*States,* 453 F.2d 327 (9th Cir. 1971). Under California law, Ramirez has stated a claim for relief for negligence. *E. g., Cobbs v. Grant,* 8 Cal.3d 229, 502 P.2d 1, 104 Cal. Rptr. 505 (1972); *Cline v. Lund,* 31 Cal. App.3d 755, 107 Cal.Rptr. 629 (1973). Under the principles set forth in this opinion, the complaint should not have been dismissed.

In concluding that the complaint states a claim upon which relief may be granted, we do not express any opinion about the underlying merits of the claim. Nor do we indicate any views on whether the doctor's alleged failure to tell Ramirez about the risk of granuloma was or was not negligent under the circumstances of this case. That question must be resolved at trial.

REVERSED AND REMANDED.