Gerald J. HOESL, Plaintiff,

v.

UNITED STATES of America and Dr.
David Allen Kasuboski, Defendants.

No. C–77–0948–CBR.

United States District Court,
N. D. California.

April 26, 1978.

Harvey M. Kletz, Kletz & Moll, Oakland,
Cal., for plaintiff.

G. William Hunter, U. S. Atty., John F.
Barg, Asst. U. S. Atty., San Francisco, Cal.,
for defendants.

MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiff brought this action against the
United States and Dr. David Allen Kasubo-
ski under the Federal Tort Claims Act
("FTCA"), 28 U.S.C. §§ 2671–2680. Only
the United States was served. The Court
has jurisdiction pursuant to 28 U.S.C.
§ 1346(b).

On December 22, 1977, defendants filed a
motion to dismiss the action for failure to
state a claim upon which relief may be
granted or, in the alternative, for summary

judgment. After both sides briefed their positions, the Court heard oral argument on January 12, 1978. In a letter dated January 17, 1978, the Court informed counsel of some preliminary conclusions and requested some additional briefing, which the parties supplied. The Court heard additional argument on February 2, 1978.

Having considered the briefs and arguments of counsel, the Court grants defendants' motion to dismiss the action and denies defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

This statement of facts is based on the complaint, whose allegations the Court assumes to be true for the purposes of the pending motions.

In May 1975, plaintiff was employed by the United States Department of the Navy as a civilian electrical engineer at the Naval Air Rework Facility ("NARF") in Alameda, California. On May 9, 1975, plaintiff's supervisors at NARF directed him to report on the same day to the Navy Regional Medical Center at Oakland, California, for a medical examination, and plaintiff complied. The examination was conducted by Dr. Kasuboski, a psychiatrist employed by the Navy, and its purpose was to determine whether plaintiff suffered from any mental disability which made him unable to carry out his responsibilities. Based on this examination, Dr. Kasuboski concluded that plaintiff did suffer from such a disability. Plaintiff alleges that Dr. Kasuboski was negligent in making this diagnosis and that the diagnosis was incorrect.

After the examination Dr. Kasuboski prepared a written report setting forth his findings. He sent this report to the NARF Industrial Medical Department, which forwarded it to plaintiff's supervisors. Relying on the conclusions reached by Dr. Kasuboski in his report, the supervisors placed plaintiff on an emergency suspension for medical reasons. Plaintiff was subsequently terminated as medically disabled.

Plaintiff appealed these actions through administrative channels, and the Civil Service Commission eventually reinstated him to his original position and awarded him at least partial back pay for the period of his suspension and separation. Plaintiff then filed an administrative claim against the United States for damages in compliance with the requirements of the FTCA, 28 U.S.C. § 2675(a). After this administrative claim was denied, plaintiff filed this action on May 6, 1977.

Plaintiff claims that as a result of Dr. Kasuboski's negligence in preparing his report, "he has suffered permanent and irreparable harm to his professional reputation * * *" and impairment of his earning capacity. Other claimed elements of damage include severe mental anguish, the expenses which plaintiff incurred in his efforts to obtain relief in administrative and judicial proceedings, and the rest of his back pay. The general damages sought are seven million dollars and as yet unascertained special damages.

## II. LIABILITY OF THE UNITED STATES

Plaintiff contends that he seeks to recover for the medical malpractice of Dr. Kasuboski and that the FTCA provides a remedy for negligent medical performance by government personnel, *see Ramirez v. United States,* 567 F.2d 854, 856 (9 Cir. 1977) (*en banc*). However, " 'the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states,' " and "a litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized." *Johnson v. United States,* 178 U.S. App.D.C. 391, 394–395, 547 F.2d 688, 691–692 (1976) (footnotes omitted), *quoting Aktiebolaget Bofors v. United States,* 90 U.S. App.D.C. 92, 95, 194 F.2d 145, 148 (1951). The correct characterization of the tort for which plaintiff seeks to hold the United States liable is defamation, and because libel and slander are torts for which the United States is immune, 28 U.S.C. § 2680(h), plaintiff has not stated a claim

upon which relief may be granted against the United States.

Plaintiff states a cause of action for defamation under California law. The substantive tort law of California governs plaintiff's claim under the FTCA because the allegedly tortious conduct was committed in California and because the alleged injury to plaintiff caused by that conduct was suffered by him in this state. *Crain v. Krehbiel,* 443 F.Supp. 202, 212 n. 6 (N.D.Cal. 1977). California Civil Code § 45 defines libel as

> "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

Plaintiff's complaint contains allegations which state a claim under this section.[1]

First, the complaint alleges that Dr. Kasuboski's diagnosis of plaintiff was false.

Second, plaintiff alleges that the defamatory matter applies to and concerns him, as California Code of Civil Procedure § 460 requires.

Third, plaintiff has alleged the publication of this allegedly false diagnosis. Publication consists of the communication of the defendant's characterization of the plaintiff to a person other than the plaintiff.[2] *Farr v. Bramblett,* 132 Cal.App.2d 36, 281 P.2d 372, 378 (1955); *Hellar v. Bianco,* 111 Cal. App.2d 424, 244 P.2d 757, 759 (1952). Plaintiff alleges that Dr. Kasuboski sent a copy of his diagnostic report to his superiors, who then forwarded it to plaintiff's supervisors.

Fourth, Dr. Kasuboski communicated his diagnosis to plaintiff's superiors by means of a written report, so the publication was in writing.

Finally, plaintiff alleges that the publication of this diagnosis tended "to injure him in his occupation." Cal.Civ.Code § 45. California applies a broad definition to injuries to reputation, *Moore v. Greene,* 431 F.2d 584, 592 (9 Cir. 1970), and language alleged to be libelous need only be fairly included within the statutory definition of libel. *Schomberg v. Walker,* 132 Cal. 224, 227, 64 P. 290, 291 (1901). The imputation of severe psychological problems to an individual is generally held defamatory on its face. *Mattox v. News Syndicate Co.,* 176 F.2d 897, 901 & n. 5 (2 Cir.), *cert. denied,* 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949) (L.Hand, J.) (general rule that publication that person is insane or of unstable mind is libelous per se); W. Prosser, *Law of Torts* 758 & n. 71 (4th ed. 1971) (hereinafter cited as Prosser); American Law Institute, *Second Restatement of the Law of Torts* § 573 Comment (c) and Illustration 6, at 191–193 (1977) (hereinafter cited as Restatement of Torts).

Like other courts, California courts have refused to hold defamatory on its face or defamatory at all an imputation of mental disorder which is made in an oblique or hyperbolic manner. *Correia v. Santos,* 191 Cal.App.2d 844, 13 Cal.Rptr. 132, 137 (1961) (statement made "not to describe the plaintiff as a person who was mentally ill but as one who was unreasonable in his actions and his demands"); *Campbell v. Jewish Committee for Personal Service,* 125 Cal. App.2d 771, 271 P.2d 185, 187–188 (1954) (letter implying that mental patient released by hospital should still be institutionalized is not libelous per se); *Wetzel v. Gulf Oil Corp.,* 455 F.2d 857, 863 (9 Cir. 1972) (dictum that "nut" and "crazy" in context of argument are not libelous per se under Arizona law); *Fram v. Yellow Cab Co. of Pittsburgh,* 380 F.Supp. 1314, 1329–1330 (W.D.Pa.1974) (under circumstances of case,

---

**1.** The Court omits any discussion of privilege as an element of a cause of action for defamation because it is irrelevant in defamation suits against the United States. The Government is immune from liability for defamation regardless of privilege.

**2.** Throughout this opinion, the Court uses the term publication in this specialized sense which has no necessary connotation of communication to the public generally or to large numbers of people.

characterization of plaintiff as "paranoid" and "schizophrenic" constitutes nondefamatory hyperbole). However, in a case involving the unambiguous and considered publication to an employer that an employee has a specified mental disorder serious enough to make him unfit for his job, California courts would unquestionably follow other courts and hold the publication defamatory on its face.

Dr. Kasuboski's report is such a publication. It did more than impute or imply plaintiff's unfitness for his position; it explicitly stated that he was unfit because of a psychiatric disorder. Even if this defamatory publication was not libelous on its face, it is still actionable provided that plaintiff "alleges and proves that he has suffered special damage as a proximate result thereof." Cal.Civ.Code § 45a. Plaintiff has satisfied that requirement because he alleges that the publication of the report led directly to his suspension and termination.

■ If one of plaintiff's coworkers had accused him of the kind of psychiatric disorder that Dr. Kasuboski diagnosed, plaintiff could sue only for defamation, and the mere fact that defendant in this case is a physician and that he obtained the allegedly defamatory information about plaintiff during the course of a professional consultation does not mean that he committed some tort other than defamation. Under the law of California and other jurisdictions, a doctor who communicates untrue medical information about his patient to a third party commits defamation, unless of course the publication is privileged. *Shoemaker v. Friedberg*, 80 Cal.App.2d 911, 183 P.2d 318 (1947); *Chafin v. Pratt*, 358 F.2d 349 (5 Cir. 1966) (defamation action against government psychiatrist for report that patient was mentally disturbed).

Not every tort that a doctor commits with respect to a patient is medical malpractice. In the typical malpractice case a doctor negligently makes a mistaken diagnosis, administers the wrong treatment to his patient or fails to administer the right treatment because of that mistake, and thereby injures the patient's physical or mental health. The concept of malpractice may be broad enough to include the case where a doctor causes severe emotional distress to his patient by informing him of a negligent and mistaken diagnosis, *see Morgan v. Aetna Casualty & Surety Co.,* 185 F.Supp. 20 (E.D.La.1960) (Louisiana law), or where a patient who reasonably relies on such a diagnosis obtains treatment for his misdiagnosed condition from another source which injures his health. In these latter two cases, the injury to the patient occurs not because the negligent doctor administered the wrong treatment or failed to administer the right one but because of the communication of the incorrect diagnosis to the patient himself.

This case presents neither of those situations. Plaintiff does not allege that Dr. Kasuboski or anyone else ever undertook to treat him for any psychological problem, and plaintiff was not injured by a failure to obtain treatment for a psychological problem which he insists he never had. Nor does plaintiff allege that he ever believed or suspected that Dr. Kasuboski's diagnosis was correct and that he therefore lost self-respect or otherwise suffered emotional distress. To the contrary, it appears that plaintiff always refused to accept this diagnosis. The alleged injury to plaintiff did not occur because his doctor relied on an incorrect diagnosis or because plaintiff himself relied on that diagnosis; it occurred because plaintiff's supervisors relied on it. Dr. Kasuboski's allegedly wrongful acts therefore do not constitute medical malpractice in any usual meaning of the term.[3]

---

**3.** Even if this were an action for medical malpractice, plaintiff still would not have stated a claim upon which relief may be granted under California law and therefore under the FTCA. Conduct that is privileged in defamation actions under Cal.Civ.Code § 47 is also privileged in other kinds of actions. *Deaile v. General*

*Telephone Co. of California,* 40 Cal.App.3d 841, 115 Cal.Rptr. 582, 587 (1974) (privilege applied in action for intentional infliction of emotional distress and wrongful discharge); *Pettitt v. Levy,* 28 Cal.App.3d 484, 104 Cal.Rptr. 650, 653 (1972) (privilege applied in action for negligent infliction of emotional distress and negligent

The disclosure by a doctor to third persons of medical information about a patient may in some circumstances give rise to a statutory cause of action or to a cause of action for invasion of privacy or for a breach of contract. *See* 5 U.S.C. § 552a(g) (Privacy Act); Cal.Welf. & Inst.Code §§ 5328 and 5330 (statutory cause of action for disclosure of confidential psychiatric information about institutionalized patients); *Doe v. Roe,* 400 N.Y.S.2d 668, 674, 676 (Sup. Court 1977); *Hammonds v. Aetna Casualty & Surety Co.,* 243 F.Supp. 793 (N.D.Ohio 1965) (Ohio law). But those circumstances are not present in this case. Disclosure is actionable only when it is improper because, for example, the patient has not authorized the doctor to disclose the information. Plaintiff does not allege that it was improper for Dr. Kasuboski to communicate his diagnosis to plaintiff's supervisors. He claims only that Dr. Kasuboski should not have communicated the wrong diagnosis.

■ The tortious conduct that plaintiff alleges, the communication to his employer of a report falsely calling him unfit, is the kind of conduct that gives rise to defamation actions. All the injuries which plaintiff alleges were caused by an injury to his reputation. Dr. Kasuboski's report about his unfitness resulted in his suspension and termination, and his claimed emotional injuries are the kind recoverable in defamation actions. Cal.Civ.Code § 48a(4)(a–b); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974) ("the more customary types of actual harm inflicted by defamatory falsehood include * * * mental anguish and suffering"); Restatement of Torts, *supra,* § 623, at 325. In light of these factors, it is clear that under California law, the tort which Dr. Kasuboski allegedly committed was defamation. The United States has not waived its sovereign immunity against "[a]ny claim arising out of * * * libel [or] slander," 28 U.S.C. § 2680(h), so plaintiff has not stated a claim for relief under the FTCA.

Whether a claim arises out of libel or slander within the meaning of 28 U.S.C. § 2680(h) is a question of federal law, so the fundamental nature of plaintiff's action against the United States cannot be determined completely by state law, although in this case the result turns out to be the same under both state and federal law. Reports on the fitness of federal employees result more often in suits against the federal employees who author them than in suits against the federal government itself, and the basic character of the author's and the government's liability should be the same. Federal courts have consistently used the rubric of defamation to analyze this category of cases, which includes suits against government psychiatrists and suits based on imputations of mental disorder. *E. g., Urbina v. Gilfilen,* 411 F.2d 546 (9 Cir. 1969); *West v. Garrett,* 392 F.2d 543 (5 Cir. 1968); *LeBurkien v. Notti,* 365 F.2d 143 (7 Cir. 1966) (imputation of mental disorder); *Chafin v. Pratt,* 358 F.2d 349, 351 n. 5 (5 Cir. 1966) (report by government psychiatrist that plaintiff was mentally disturbed); *Gorst v. Ferguson,* 431 F.Supp. 125 (W.D. Okl.1977); *Knuemann v. Naranjo,* 378 F.Supp. 104, 105 n. 1 (D.Md.1974) (report that plaintiff's conduct was "abnormal, disruptive and frightening").

Because the substance of plaintiff's claim is defamation, he cannot avoid the defamation exception of the FTCA by attaching a different label to the tort. *See* p. 1171, *supra.* In only one case discovered by the Court was a plaintiff permitted to maintain a tort suit against the federal government because a federal employee made an unfavorable report about him. In *Hendry v. United States,* 418 F.2d 774 (2 Cir. 1969), a pilot was denied a license because a government psychiatrist made an allegedly negligent report about his mental condition. Although the court held that the United States was

---

misrepresentation). The interests which § 47 is intended to protect deserve that protection regardless of the context in which they arise. For the same reasons that Dr. Kasuboski's conduct is privileged under federal common law

(*see* p. 1180, *infra*), it is privileged under § 47(3), so the communication of his report to plaintiff's superiors cannot constitute the basis for a malpractice action any more than for a defamation action.

not immune, it did not consider the defamation exception to the FTCA, so *Hendry* does not stand as contrary authority. Even if the conduct which plaintiff alleges falls within the parameters of some new tort, *cf. Union Oil Co. v. Oppen,* 501 F.2d 558 (9 Cir. 1974) (tort of negligent imposition of economic loss under California law), the United States is not liable. Congress did not intend to make the United States liable for any conduct which fits "the traditional and commonly understood legal definition" of the tort of defamation, *see Neustadt· v. United States,* 366 U.S. 696, 706–707, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961) (definition of misrepresentation in § 2680(h)), and this legislative intent cannot be frustrated by calling plaintiff's cause of action something other than defamation. The United States has immunity not only for defamation claims but also for "[a]ny claim arising out of" defamation, 28 U.S.C. § 2680(h), and this is such a claim.

*Ramirez v. United States,* 567 F.2d 854 (9 Cir. 1977) (en banc), is completely consistent with this interpretation of congressional intent in the FTCA and its exclusions. In *Ramirez,* the Court of Appeals held that the failure of a physician to warn a patient of a risk attendant to surgery does not constitute a misrepresentation within the meaning of 28 U.S.C. § 2680(h). The court relied on evidence of congressional "intent to provide a remedy for negligent medical performance by government personnel." *Id.* at 856. Because "Congress made no distinction between failure to obtain informed consent and other forms of malpractice" and because the court could "discern no policy reasons for believing that it intended to do so," the court declined "to distinguish artificially between forms of medical malpractice." *Id.,* at 856–857.

*Ramirez* does not stand for the proposition that all torts on patients committed by their doctors constitute medical malpractice. The interests of the patient in full disclosure of the risks of a medical procedure differ from the interests involved in disclosure of medical information to third parties.[4] As the court said in *Ramirez,* "The misrepresentation exclusion presumably protects the United States from liability in those many situations where a private individual relies to his economic detriment on the advice of a government official" because "[t]o expose the United States to potential liability in such situations might significantly inhibit the orderly workings of government agencies." *Id.,* at 856. The injury to a patient who relies on his doctor's misrepresentation of the risks of a medical procedure does not involve any " ' "invasion of interests of a financial or commercial character, in the course of business dealings." ' " *Id.,* at 856, *quoting Neustadt v. United States, supra,* 366 U.S. at 711 n. 26, 81 S.Ct. 1294. The rationale of the misrepresentation exclusion does not apply to a doctor who prevents his patient from giving informed consent to a medical procedure.

In contrast to the situation in *Ramirez,* compelling policy considerations incorporated in the defamation exclusion require that plaintiff's cause of action fall within that exclusion. The purpose of the defamation exclusion ·was "that government officials should not be hampered in their writing and speaking by the possibility that their actions would give rise to government liability." *Quinones v. United States,* 492 F.2d 1269, 1280 (3 Cir. 1974). Preserving the "freedom of official expression" justifies depriving citizens injured by negligently and even maliciously defamatory publications of government employees of a remedy against the United States. Cf. Handler & Klein, *The Defense of Privilege in Defamation Suits Against Government Executive Officials,* 74 Harv.L.Rev. 44, 45 (1960) (discussion of same considerations with respect to personal, not governmental, immunity)

---

4. This discussion is limited to cases where a doctor communicates medical information about a patient to a third party for purposes unrelated to treatment. It might be a different case where a doctor who makes a negligent misdiagnosis tells his misdiagnosis to other medical personnel who are directed or who should reasonably be expected to rely on it in administering treatment. Under those circumstances, the doctor and the United States may be liable for malpractice.

(hereinafter cited as Handler & Klein). Like any other government official, government doctors would be less likely to speak and write frankly if their actions could give rise to government liability, and there is no reason to think that Congress was any less concerned about inhibiting the willingness of doctors to communicate than about inhibiting the willingness of other federal employees. Although an action for malpractice is intended to protect a patient who received improper medical care (which includes care for which he was unable to give informed consent, as in *Ramirez*), it is not designed to provide a remedy for injury to a patient's reputation.

Liability for defamation is not needed to give federal doctors an incentive not to make improper disclosures of confidential medical information to people inside and outside government who do not have a legitimate need for the information. Individuals examined or treated by government doctors have a claim against the agency which maintains their medical records for improper disclosure of medical information about them, and they can recover their actual damages, as well as costs and reasonable attorney fees. 5 U.S.C. § 552a(g)(4). Such an action would lie regardless of whether the improperly disclosed information was accurate or false, and to the extent it was false, the patient's damages would be greater. An action for defamation need be brought only in cases where the disclosure was proper but the information was inaccurate, and in those cases, a doctor should be as free to speak openly and frankly about matters in the scope of his responsibility as other federal employees are with respect to matters within the scope of their duties.

This case, which involves disclosure of information relevant to an individual's job fitness to his employer, illustrates the need for frank disclosure by doctors. Employers obviously have a legitimate need and even a duty to determine whether or not their employees are professionally, physically, and psychologically capable of performing their duties. If the individual who evaluates the fitness of an employee is afraid to make frank reports of his conclusions and

as a result downplays or even fails to mention a deficiency affecting fitness, the employer's legitimate interest in obtaining accurate information about his employee's fitness is frustrated. The employer's interest in complete reports is the same whether the deficiency involves the employee's occupational, physical, or psychological fitness. Consequently, a doctor who evaluates an employee's fitness needs the same protection as the people who evaluate other aspects of fitness.

■■ The case for parallel treatment of doctors and other evaluators of fitness is especially strong where the doctor is not a treating but an examining physician. An examining physician is a doctor who does not undertake either by himself or in connection with others to advise or treat the people whom he examines. *Betesh v. United States,* 400 F.Supp. 238, 246–247 (D.D.C. 1974); *Keene v. Wiggins,* 69 Cal.App.3d 308, 138 Cal.Rptr. 3, 6–7 (1977). This limited role of examining physicians and their often adversarial relationship with the people they examine, *id.,* at 7, produce a corresponding reduction of their obligations. For example, an examining physician has no duty under California law to inform an examinee of medical problems which he discovers during the course of his examination, *id.,* at 7–8, although an employer who sends his employee to the doctor may be liable. *Coffee v. McDonnell-Douglas Corp.,* 8 Cal.3d 551, 105 Cal.Rptr. 358, 503 P.2d 1366 (1972); *Betesh v. United States, supra,* 400 F.Supp. at 245–247. When an examining physician is employed to examine other employees of his employer, his duties run primarily to the latter. *See Keene v. Wiggins, supra,* 69 Cal.App.3d 308, 138 Cal.Rptr. at 7 & n. 3. An incorrect but nonmedical evaluation of an employee made by a personnel officer and sent to the employer would give rise only to a cause of action for defamation, and the same result should occur in the case of the examining physician, whose function in the employment relation is basically identical to that of any other evaluator of the fitness of employees. Because

Dr. Kasuboski was an examining physician,[5] plaintiff's cause of action is one for defamation.

It is true that in some cases, a misdiagnosis by an examining physician causes effects qualitatively different from those caused by the mistakes of employees who evaluate nonmedical aspects of fitness. For example, a physically unfit employee may engage in work which worsens his condition or fail to obtain needed treatment through reliance on a mistaken diagnosis. No analogous injury is inflicted on, for example, the employee who is allowed to work because a test mistakenly establishes his technical competence. Whether an employee can recover from either an examining physician or his employer for the unique injuries caused by a medical misdiagnosis of an examining physician is not an issue in this case.[6] The only injury alleged by plaintiff results from the publication of Dr. Kasuboski's report and consists of an injury to his reputation, and that injury is no different from the injury caused by an erroneous fitness report of a nonmedical examiner.

Although the victim of defamation by government employees is denied some of the relief available to other victims of defamation, he can obtain remedies for much of the wrong he experiences. He still has a remedy against the employee who defamed him, although the latter is protected to a degree by an immunity from personal liability (*see* pp. 1178–1181, *infra*). In addition, a defamed federal employee has administrative and judicial remedies for wrongful discharge, *see, e. g., Doe v. Hampton,* 566 F.2d 265 (D.C.Cir.1977) (judicial review of discharge of civil service employee based on adverse report of government

psychiatrist). Although such an employee gets no damages for part of the injury caused by the defamation of another federal employee (particularly the emotional distress), he can obtain reinstatement and backpay by establishing that the government report which led to his dismissal was incorrect, as plaintiff did in this case. *See Becker v. Philco Corp.,* 372 F.2d 771, 775–776 (4 Cir.), *cert. denied,* 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967); 5 U.S.C. § 5596 (Back Pay Act). An individual who is not a government employee can also obtain at least prospective relief from adverse governmental actions taken in reliance on false reports about his character or ability, so that, for example, a pilot denied a license because of the mistaken report of a government psychiatrist, as in *Hendry v. United States, supra,* 418 F.2d 774, can obtain his license. These remedies provide a determination that the publication was defamatory, and declaratory relief in defamation actions can be a substantial benefit to victims. Restatement of Torts, *supra,* at 327–329.

Governmental immunity from monetary liability in defamation actions imposes a burden on some innocent victims of governmental defamation. Handler & Klein, *supra,* 74 Harv.L.Rev. at 78–79 & n. 123. That price is justified because the prospect of governmental liability, like the prospect of individual liability (*see* pp. 1179–1180, *infra*) deters federal employees from speaking and writing forthrightly. *See* pp. 1175–1176 *supra.* Although Congress has discounted the deterrent effect of governmental, as distinguished from personal, liability on employee conduct for some torts other than defamation, *see Crain v. Krehbiel, supra,* 443 F.Supp. at 216–217, and

---

**5.** Plaintiff does claim that he thought Dr. Kasuboski was going to evaluate not his mental but his physical health. But plaintiff alleges no uncertainty or confusion that the purpose of the examination was only to collect information for a medical evaluation of plaintiff's fitness as a government employee. There is no claim that Dr. Kasuboski ever advised or treated plaintiff concerning any medical problem.

**6.** The Court also emphasizes that this case involves only the cause of action that a patient has either against a psychiatrist who fails to

observe reasonable medical standards and therefore makes an incorrect diagnosis or against the psychiatrist's employer. The Court does not decide, for example, under what circumstances an employer can sue a psychiatrist hired to evaluate the fitness of his employees or under what circumstances an individual injured physically or economically because of the unfitness of a psychiatric patient can sue the patient's psychiatrist or that psychiatrist's employer.

although the blanket immunity of the United States from liability for some intentional torts including defamation has been criticized, Handler & Klein, *supra,* 74 Harv.L. Rev. at 76–78, Congress decided to make the United States immune for claims arising out of defamation by governmental employees. Plaintiff is not entitled to relief under the FTCA for his defamation claim.[7]

### III. LIABILITY OF DR. KASUBOSKI

Plaintiff is not entitled to any relief from Dr. Kasuboski because Dr. Kasuboski's report was privileged.

■ The scope of personal immunity of federal employees like Dr. Kasuboski is a matter of federal common law. *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); *Howard v. Lyons,* 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); *Dacey v. Dorsey,* 568 F.2d 275, 278 (2 Cir. 1978); *Chafin v. Pratt, supra,* 358 F.2d at 353.[8] The state of this federal law, especially in connection with absolute immunity, is somewhat uncertain. In 1959, the Supreme Court held that high-level executive officers have absolute immunity in defamation actions for statements made "within the outer perimeter of [their] line of duty * * *." *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). The protection of absolute immunity has gradually been extended to lower levels of the executive branch in both defamation cases, *Chafin v. Pratt, supra,* 358 F.2d at 351 n. 5 (action against government psychiatrist); *Waymire v. Deneve,* 333 F.2d 149 (5 Cir. 1964) (action against customs agent); *Poss v. Lieberman,* 299 F.2d 358 (2 Cir.), *cert. denied,* 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962) (action

against H.E.W. claims representative); *Taylor v. Glotfelty,* 201 F.2d 51 (6 Cir. 1952) (pre-*Barr* action against government psychiatrist); *Gorst v. Ferguson, supra,* 431 F.Supp. 125 (action against field office supervisor), and other types of tort actions, *Blitz v. Boog,* 328 F.2d 596, 600 (2 Cir.) (Marshall, J.), *cert. denied,* 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (1964) (action against government psychiatrist). Courts have generally recognized an absolute privilege for reports about the fitness of a government employee when the reporting employee performed at his own initiative a duty to make the report, *Barr v. Matteo, supra,* 360 U.S. at 575, 79 S.Ct. 1335; *West v. Garrett, supra,* 392 F.2d 543, and especially when the reporting employee was specifically ordered by his own superior to make the report or was specifically requested to do so by the other employee's superiors. *Gordon v. Adcock,* 441 F.2d 261, 262 (9 Cir. 1971) ("manifestly proper" request by Civil Service Commission); *Preble v. Johnson,* 275 F.2d 275, 278 & n. 1 (10 Cir. 1960); Restatement of Torts, *supra,* § 595(1)(b) and (2)(a), at 268. An employee who prepares a report for internal use only is more likely to receive absolute immunity than one who issues a public release. *Frommhagen v. Glazer,* 442 F.2d 338, 340 (9 Cir. 1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 711, 30 L.Ed.2d 729 (1972); *Ruderer v. Meyer,* 413 F.2d 175, 179 (8 Cir.) (Blackmun, J.), *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969); *Becker v. Philco Corp., supra,* 372 F.2d at 775.

■ Recent Supreme Court cases involving the scope of executive immunity under the civil rights laws have suggested that executive employees may be entitled only to

---

**7.** This conclusion disposes of defendants' contention that plaintiff has an exclusive remedy under the Federal Employees Compensation Act ("FECA"). If plaintiff had a remedy under FECA, it would be exclusive, 5 U.S.C. § 8116(c), but FECA does not provide any remedy, exclusive or otherwise, for defamation of government employees by government employees. An injury to reputation is not a "personal injury sustained while in the performance of his duty * * *" within the meaning of 5 U.S.C. §§ 8102(a) and 8101(5).

**8.** Defendants contend that Dr. Kasuboski has immunity under Cal.Govt.Code §§ 855.6 and 855.8. Assuming without deciding that these sections apply to the type of conduct which Dr. Kasuboski allegedly engaged in, they apply to state and not federal psychiatrists. *See* Cal. Govt.Code §§ 811.2 and 811.4. Even if the California legislature has the authority to immunize federal employees, it clearly has not exercised it.

a qualified immunity in common-law actions. *Compare Economou v. U. S. Department of Agriculture,* 535 F.2d 688 (2 Cir. 1976), *cert. granted,* 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977) (only qualified immunity available in non-defamation actions), *with Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 184 U.S.App.D.C. 397, 566 F.2d 289 (1977) (*en banc*) (absolute immunity available in defamation actions); *see generally* Note, *Federal Executive Immunity From Civil Liability in Damages: A Reevaluation of Barr v. Matteo,* 77 Colum.L.Rev. 625 (1977). It is unnecessary for this Court to enter that debate. For it is clear that Dr. Kasuboski's report is protected by a qualified privilege even if it is not absolutely privileged.

The law of defamation has long recognized a qualified or conditional privilege for publications made in a reasonable manner and for a proper purpose. Prosser, *supra* § 115, at 785–786; Restatement of Torts, *supra,* §§ 593–612, at 285–305; *see* Cal.Civ. Code § 47(3). This qualified privilege may be invoked when publication is necessary to protect the interests of persons other than the publisher. Prosser, *supra,* at 787–789; Restatement of Torts, *supra,* § 595, at 268. It is, for example, permissible to inform an employer of the unfitness of one of his employees, Restatement of Torts, *supra,* § 595 Comment (i), at 273, and this category of privileged publications includes warnings by a physician to the employer of a patient. *See* cases cited in Prosser, *supra,* at 788 n. 2.

■ A qualified privilege is lost if the publisher acts with malice or if the publisher abuses the occasion of publication. Malice exists when the publisher knows the published matter to be false or acts in reckless disregard as to its truth or falsity,

Restatement of Torts, *supra,* § 600, at 288, or perhaps if the publisher is motivated by spite or ill will toward the subject of the communication. *Compare* Restatement of Torts, *supra,* § 603, at 291, *with* Prosser, *supra,* at 794 ("it is the better and perhaps more generally accepted view that the mere existence of such ill will does not necessarily defeat the privilege"). Negligence in ascertaining the facts in the allegedly defamatory publication does not meet this scienter requirement. *E. g., Tendler v. Dun & Bradstreet, Inc.,* 43 Cal.App.3d 788, 118 Cal.Rptr. 274, 276 (1974). The definition of recklessness required by the Constitution in suits against public officials and public figures applies also to the scope of the federal common-law qualified immunity:

> "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).[9]

A second qualification of the qualified privilege tracks to a degree the requirement of the absolute privilege of government executive officials that the publication is arguably within the limits of their authority:

> "qualified privilege does not extend * * to the publication of irrelevant defamatory matter with no bearing upon the public or private interest which is entitled to protection; nor does it include publication to any person other than those whose hearing of it is reasonably believed to be necessary or useful for the furtherance of that interest." Prosser, supra, at 792

9. The Court emphasizes that it borrows this definition of malice not because the Constitution requires it but because it accurately states the common-law standard of malice in suits against federal employees. The Constitution requires that this type of malice be proved in defamation suits by public officials. *E. g., Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966) ("the 'public official' designation applies at the very least to those

among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs") (footnote omitted). Because Dr. Kasuboski has a nonconstitutional immunity at least as broad as any possible constitutional immunity, the Court need not decide whether plaintiff is the kind of public official who must establish malice in a defamation action brought by him.

(footnotes omitted); *Williams v. Gorton,* 529 F.2d 668, 672 (9 Cir. 1976) (Washington law).

This qualified privilege in defamation actions should be distinguished from the qualified immunity available to executive officers in other types of actions. That latter qualified immunity makes an officer immune from monetary liability for wrongful conduct " 'only if (1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith.' " *Midwest Growers Cooperative Corp. v. Kirkemo,* 533 F.2d 455, 463 (9 Cir. 1976), *quoting Mark v. Groff,* 521 F.2d 1376, 1379–1380 (9 Cir. 1975) (emphasis in original). Under that test, an employee can be held liable if he negligently fails to observe reasonable standards in performing his duty and if he cannot reasonably believe that he observed reasonable standards. *See Navarette v. Enomoto,* 536 F.2d 277, 281 (9 Cir. 1976), *rev'd on other grounds sub nom. Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).

But simple negligence does not satisfy the scienter requirement of the qualified privilege in the law of defamation, which accords an immunity broader than that for nondefamation actions to all individuals, including public officials, who publish defamatory matter in the performance of an official duty. The broader immunity for public officials is necessary because the risk of monetary liability for negligent defamation and the prospect of defending unfounded but expensive and time-consuming litigation "would have a chilling, if not paralyzing, effect on an official's willingness to speak out, in the exercise of his discretion, to further the public interest." *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution, supra,* 566 F.2d at 292 & n. 7. The policy as a whole thrives on the "uninhibited, robust, and wide-open" debate of public issues, *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and government is no different. If participants in the governmental decision-making process are unwilling to articulate vigorously their views, governmental decision-makers will be unable to make well-informed and sound choices among the alternative courses of action open to them. For the same reasons that society recognizes a freedom of private speech broader than the freedom of private action, it benefits from a broader immunity for what government officials say than for what they do.

The need to minimize "the tendency of bureaucrats to sit tight rather than take action likely to rile the individuals or groups being regulated" or to displease other federal employees can justify the denial of a remedy to individuals maliciously defamed by federal employees. *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution, supra,* 566 F.2d at 293. The possibility of an action for negligent defamation would abridge the freedom of official speech to an even more unacceptable degree. Consequently, an inferior administrative officer who is not entitled to an absolute privilege is immunized from liability for a defamatory communication unless he acts with intentional or reckless disregard of its falsity. Restatement of Torts, *supra,* § 598A, at 284. Even if the Supreme Court narrows the class of inferior administrative officers with an absolute immunity and loosens the scienter requirement to impose liability on those who act with malice in publishing a defamatory matter within the outer perimeter of their line of duty, it will not establish a looser scienter requirement for suits against federal employees than generally exists in suits against private individuals who publish a defamatory communication in the course of performing a public duty. Public officials deserve and require at least as much protection as private individuals.

The factual allegations of plaintiff's complaint demonstrate that Dr. Kasuboski's report was privileged under the qualified immunity for reports about an employee's fitness to his employer. Dr. Kasuboski's job was to evaluate the fitness of government employees when instructed to do so, and when plaintiff's supervisors made the entirely legitimate request that Dr. Kasuboski examine him, *see Gordon v. Adcock, supra,* 441 F.2d at 262, Dr. Kasuboski complied, as he should have done. The doctor sent his

report only to those people who needed access to it, and there is no allegation that he included extraneous or scurrilous matter irrelevant to his diagnosis. Plaintiff alleges only that Dr. Kasuboski acted negligently in gathering the facts which he stated in his report, and mere negligence does not satisfy the scienter requirement of the qualified privilege.

Because Dr. Kasuboski's report was privileged and because the facts underlying the privilege appear on the face of the complaint, *see Pond v. General Electric Co.,* 256 F.2d 824, 828 & n. 4 (9 Cir.), *cert. denied,* 358 U.S. 818, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958), plaintiff's claim against Dr. Kasuboski must be dismissed for failure to state a claim upon which relief for defamation may be granted.

IT IS HEREBY ORDERED that defendants' motion to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(6) is granted.

IT IS HEREBY FURTHER ORDERED that counsel for defendants shall prepare an appropriate form of judgment, obtain approval as to form from counsel for plaintiff, and submit it to the Court for execution within ten (10) days of the date of this Memorandum of Opinion.