James A. MANGAN, Appellant,

v.

Dr. David W. CLINE, Respondent.

No. C6–87–222.

Court of Appeals of Minnesota.

Aug. 25, 1987.

Review Denied Oct. 28, 1987.

William G. Mose, Baxter, for appellant.

Andrew W. Danielson, Andrew J. Mitchell, Larkin, Hoffman, Daly & Lindgren, Minneapolis, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a judgment of dismissal entered against appellant Mangan on his claim of negligence and defamation against respondent Dr. Cline, a psychiatric consultant to the Army. The trial court ruled the suit was barred by the doctrine of intramilitary immunity announced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The judgment is to be treated as a summary judgment. Minn.R.Civ.P. 12.03. We affirm.

## FACTS

James Mangan was an ROTC cadet at the University of Minnesota who underwent a psychiatric examination in May 1982, just prior to his scheduled commissioning in the Army Reserve. Mangan contends that his professor of military science ordered the examination in response to Mangan's contacting Congressman Martin Sabo's office in an effort to obtain commissioning in the Air Defense Artillery.

The examination was given at the Minneapolis Armed Forces Entrance and Examination Station (AFEES). Following a medical exam, Mangan was referred to respondent Dr. Cline for a psychiatric consultation. Cline met with Mangan on May 4 and 11, 1982. Dr. Cline diagnosed Mangan as suffering from "paranoid personality disorder." He recommended an S4 profile, which is below acceptable standards. As a result, Mangan was disenrolled from ROTC and denied commissioning in the Army Reserve. Mangan left the service at the end of his six-year enlistment.

Mangan initially sued both Dr. Cline and Dr. John Rosenow, the Chief Medical Officer of AFEES. The case was removed to federal court. The federal court substituted the United States as a defendant in place of Rosenow, and dismissed Mangan's claim without prejudice for failure to exhaust his administrative remedies. The court remanded the claim against Dr. Cline to state court, finding that Cline was not an employee of the United States and therefore the court lacked jurisdiction. After Mangan had exhausted his administrative remedies, the federal court dismissed his action against the government, based on the doctrine announced in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

Mangan's amended complaint against Cline alleges negligent diagnosis and defamation. Mangan alleges that Cline communicated with Mangan's professor of military science and, "with malice," planned and executed the disqualifying diagnosis.

In making his diagnosis, Dr. Cline referred to correspondence in Mangan's medical records detailing Mangan's suit against Mankato State University, where he was previously enrolled, his disagreements with a roommate there, and his transfer without ROTC permission to the University of Minnesota. Mangan contends Cline improperly relied on this correspondence. He has obtained opinions from three civilian psychiatrists stating he has no psychiatric problems.

Cline moved to dismiss the action claiming it was barred by the *Feres* doctrine. The trial court agreed and issued its order for dismissal on August 22. Prior to that date, on August 15, 1986, the trial court had received a letter from an assistant U.S. attorney which cited three cases to the trial court and argued the applicability of *Feres*. The U.S. Attorney's office defended the

federal action, but is not involved in this suit. There is no indication Mangan received a copy of this letter or had an opportunity to respond.

### ISSUES

1. Did the trial court err in granting summary judgment based on the *Feres* doctrine?

2. Is appellant entitled to a new hearing because of a non-party communication to the court?

### ANALYSIS

### I

■ The Supreme Court in *Feres* found as an implied exception to the Federal Tort Claims Act, immunity from suit

for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.

*Feres,* 340 U.S. at 146, 71 S.Ct. at 159. Mangan's argument that as an ROTC cadet he was not a "serviceman" was rejected in *Anderson v. United States,* 724 F.2d 608, 610 (8th Cir.1983), in which the court held that the *Feres* doctrine applies to members of the national guard and the reserves. His claim unquestionably arises out of his military service, because the psychiatric examination was ordered by military superiors for purposes of a military personnel decision. Therefore, the examination was an "activity incident to service." The only significant obstacle to applying the *Feres* doctrine here is Dr. Cline's non-military status.

Cline's affidavit states he was appointed as a consultant to render "medical specialty opinions," and paid on a per-consultation basis. He gave his opinions in writing to the Chief Medical Officer, who made all personnel decisions. Cline concludes "[h]e had no responsibilities for making decisions concerning the suitability of an applicant for military service." He argued in support of his motion to dismiss that he was not a government employee.

Although the *Feres* court cited a number of factors in excepting intramilitary claims from the Federal Tort Claims Act, the essential rationale behind the doctrine has been recognized as:

[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, * * *.

*United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), *quoted with approval in United States v. Shearer,* 473 U.S. at 52, 57, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985).

Cline was not part of the military command structure and could not properly be ordered to render a particular diagnosis. *Cf. Briggs v. United States,* 617 F.Supp. 1399, 1403 (D.R.I.1985), *aff'd,* 787 F.2d 578 (1st Cir.1986) (plaintiff's decedent treated at military facilities staffed by personnel under military command); *LaBash v. United States Department of the Army,* 668 F.2d 1153, 1155 (10th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982) ("military relationship" between patient and military medical personnel). Theoretically, Mangan's suit could be maintained with no effect on military discipline. We must look, however, to the substance of his claim to determine whether the *Feres* doctrine applies.

Mangan alleges Dr. Cline was negligent in diagnosing him as suffering from paranoid personality disorder. However, Cline was merely an examining physician who undertook no duty towards Mangan, whether to advise or treat him. *See Betesh v. United States,* 400 F.Supp. 238, 246–47 (D.D.C.1974). Dr. Cline's duty was to the Army, as Mangan's employer which requested the evaluation. *See Keene v. Wiggins,* 69 Cal.App.3d 308, 138 Cal.Rptr. 3 (1977). Mangan does not claim that he was ever treated for paranoid personality disorder, or that he himself accepted the diagnosis and was emotionally affected by it. *See Hoesl v. United States,* 451 F.Supp. 1170, 1173 (N.D.Cal.1978), *aff'd,* 629 F.2d 586 (9th Cir.1980) (finding a negligence claim against Navy examining physician stated a claim for defamation).

Mangan's claim is that his reputation was damaged by the communication of Cline's diagnosis to Army personnel, resulting in his disenrollment from ROTC and denial of his commission. His only action is one for defamation. *See Hoesl,* 451 F.Supp. at 1173; *see also Moessmer v. United States,* 760 F.2d 236, 237 (8th Cir. 1985) (former CIA employee's claim of negligent maintenance of personnel records was one for defamation).

As a psychiatrist advising the Army on Mangan's fitness for continued service, Dr. Cline's communications to the Army enjoyed a qualified privilege which Mangan could overcome only by a showing of malice. *See McBride v. Sears, Roebuck & Co.,* 306 Minn. 93, 97, 235 N.W.2d 371, 374 (1975). Mangan, however, contends Cline was merely one participant in a conspiracy to disenroll him because Mangan went outside the military chain of command by requesting help from his congressman. Mangan alleges no personal ill will or other motive on the part of Cline, apart from this alleged military conspiracy, which would satisfy the requirement of actual malice.

Mangan claims Cline diagnosed him as a paranoid personality at the direction of Mangan's professor of military science and Dr. Rosenow, both military officers. Thus, his claim inevitably implicates military decision-making, and requires judicial scrutiny of the conduct of military officers, even though all claims against military defendants have been dismissed.

We note the United States Supreme Court has recently held the military status of the alleged tortfeasor is not a crucial element of the *Feres* doctrine. *United States v. Johnson,* —— U.S. ——, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (suit by widow of Coast Guard helicopter pilot alleging negligence on the part of civilian FAA employee was barred by the *Feres* doctrine). *Johnson* leads to the same result we have reached here. *See also United States v. Stanley,* —— U.S. ——, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (rejecting the same distinction in a *Bivens* action).

Mangan raises a number of other issues which we need not address. He discusses the applicability of the *Feres* doctrine to a *Bivens* action for violation of constitutional rights. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Mangan, however, has not made a *Bivens* claim. Nor does his complaint allege a violation of his right to communicate with a member of Congress. *See* 10 U.S.C.A. § 1034 (1983 & Supp.1987). Mangan's claims of violations of Army regulations (mostly by persons other than Cline) are among those most clearly barred by the *Feres* doctrine, since they directly concern matters of military organization.

## II.

Mangan contends the letter from an assistant U.S. attorney, who did not represent a party in this action, was prejudicial misconduct entitling him to a new hearing. This court, however, cannot presume the trial court considered the letter. *See City of Brooklyn Center v. Metropolitan Council,* 306 Minn. 309, 314, 243 N.W.2d 102, 106–07 (1976) (presumption of correctness attaches to actions of the trial court). Although the letter did cite *Gamage v. Peal,* 217 F.Supp. 384 (N.D.Cal.1962), upon which the trial court partially relied, Dr. Cline also cited and argued this case in his memorandum. *Gamage* is not binding authority in Minnesota and is distinguishable in any event, particularly as it did not involve the *Feres* doctrine. We note that this court on appeal reviews questions of law without deference to the trial court's decision. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977). Therefore, appellant has received a reconsideration of the *Feres* issue on this appeal.

## DECISION

The trial court did not err in granting summary judgment dismissing appellant's claim. Appellant is not entitled to a new hearing.

Affirmed.