[Civ. No. 3658. Fourth Dist. July 21, 1947.]

MACEL SHOEMAKER, Appellant, v. IRWIN FRIEDBERG, Respondent.

Whelan & Whelan for Appellant.

Monroe & McInnis and R. M. Switzler for Respondent.

MARKS, J.—This is an appeal from an order granting defendant's motion for judgment notwithstanding the verdict and from the judgment thereafter entered in favor of defendant.

The action was brought for damages for slander alleged to have been published by defendant on August 25, 1945, consisting of a statement by him to the effect that plaintiff was suffering from a venereal disease. The answer denied malice and alleged qualified privilege under the provisions of subdivision 3 of section 47 and of section 48 of the Civil Code.

Plaintiff was a married woman whose husband was serving overseas in the Marine Corps at the times involved here. She lived in East San Diego and was employed in a drugstore where food was served. She resided with Mrs. Rene Burke, her friend and landlady, and Mrs. Adelaide Bradley, her mother. Defendant was a physician duly licensed to practice medicine in California with offices in the city of La Mesa.

Except as to some details the evidence is not conflicting. Plaintiff called at the office of defendant on Monday, August 20, 1945, for treatment for injuries received in a fall down an embankment while on a picnic. Her condition was such that defendant deemed it necessary to give her a thorough physical examination including tests for venereal disease. A sample of urine and a smear were taken by defendant and sent to a reputable laboratory in San Diego for examination. On the following Wednesday he received a report from the laboratory to the effect that the microscopic examinations of both specimens indicated the existence of the venereal disease which defendant had suspected as a result of the physical examination.

On Tuesday evening, in response to a telephone message, defendant made a professional call on plaintiff at her home, and made an appointment for her to call at his office the following morning, which appointment she did not keep.

On receipt of the report from the laboratory, and plaintiff's failure to keep the appointment, defendant caused a letter, dated August 23, 1945, to be sent to her which contained the following:

"Your laboratory report arrived this morning. It shows you are suffering from a venereal disease.

"Under the law, we are compelled to report this to the health authorities, and to advise you against working in any establishment handling foods.

"We are anxious to assist you, and we will hold up this report for 24 hours to give you a chance to step in and discuss your problem."

As plaintiff did not appear at defendant's office he had one of his nurses attempt to telephone her at the drugstore where she worked. This call was made either on Thursday or Friday. Plaintiff was not at the drugstore but her mother was there taking her place. According to the version of the nurse she merely requested Mrs. Bradley to urge plaintiff to call at defendant's office for further advice and did not mention the disease from which plaintiff was supposed to be suffering. Mrs. Bradley testified that the nurse told her that plaintiff was suffering from a venereal disease. Under the circumstances of this case we will have to accept this version as true.

On the afternoon of Saturday, August 25th, Mrs. Burke telephoned to defendant's office. She testified that she asked that the defendant stop bothering plaintiff as the phone calls created commotion at the drugstore. The secretary who took the message testified that she understood it to be a request for defendant to make a house call on plaintiff and so informed the doctor.

He called on plaintiff about twenty minutes later and the conversation occurred that forms the basis of this action. Plaintiff detailed the happenings at that time as follows:

"He came into the living room and asked—came to the door and asked if I had called him, and I answered him, 'No,' because I hadn't and didn't have any knowledge that he was even to be there. I was sitting at the dinette table and got up and came into the living room and sat down in the chair—in a chair, and the conversation between—Mrs. Burke went to the door, the lady that I was staying with, and she said that she had called him. And he wanted to know why. She said, 'You should know the reason why, because of the letter that Mrs. Shoemaker has received from you.' And he asked her, 'What letter?' And she said, 'Do you mean to say that a letter like that would come out of your office without your knowledge?' And he said, 'If you are talking about any letter, you will have

to take that up with my office nurse.' And then he asked her, 'What letter?', and could he see the letter; and she said the letter was in a physician's hands and would be in a lawyer's hands. So he turned to me and asked what I was suing for, and I said, 'Who said I was suing?' Then he shook his finger in my face and said very loud, 'Young lady, you are suffering from a severe case of gonorrhea.' And I said, 'Dr. Friedberg, I don't see how you can say that when I have negative reports from a laboratory saying that I don't have it.' And he said, 'I too have laboratory reports from a reliable laboratory that you have a positive smear and are suffering from a severe case of gonorrhea, and if you don't do something about it and come to my office I intend to take drastic charges against you.' He turned and walked out the door and said I would pay for the house call.''

The testimony of other witnesses concerning this conversation did not differ materially from that of plaintiff except in minor details and except that defendant testified that plaintiff did not participate in it and that it was between Mrs. Burke and himself.

Plaintiff testified that she received the letter we have quoted on the morning of August 24th; that a neighbor, Mrs. Burgomaster, was helping care for her and received the letter from the postman; that she told Mrs. Burgomaster the contents of the letter and that perhaps she read it; that she disclosed the contents of the letter to Mrs. Burke and Mrs. Bradley prior to August 25, 1945.

Plaintiff consulted another physician who sent her to another laboratory in San Diego for further examination on August 25, 1945. A slide smear was made and examined microscopically and a culture was made, both with negative results. There is evidence in the record that when an examination and tests show the existence of a venereal disease more than one negative test should be made before error in a prior positive test is demonstrated; that such tests should be made from smears taken at different times. However, it is not now affirmatively contended that plaintiff was actually suffering from such a disease.

During the conversation of August 25th, which we have detailed, plaintiff and Mrs. Burke were in the living room of the home. A dinette is next to this living room and connected with it by an arched opening about 5 feet wide. Mrs. Bradley was seated at a table in the dinette. A neighbor, Mrs. Rice, entered the back door of the house during the

early part of the conversation and stood by the chair occupied by Mrs. Bradley during the statements made by defendant to plaintiff to the effect that she had a venereal disease. Both Mrs. Rice and Mrs. Bradley heard those statements. Defendant testified that he did not see either Mrs. Rice or Mrs. Bradley and did not know that either woman was in the dinette, and did not know that any one, other than Mrs. Burke and plaintiff was within hearing distance during the conversation. We must conclude that Mrs. Rice did not know, prior to hearing the statements of defendant, that the tests made by the first laboratory showed plaintiff was suffering from a venereal disease. Plaintiff knew of the presence of Mrs. Rice and Mrs. Bradley in the dinette. She made no effort to check or adjourn the conversation concerning the letter and its contents, which conversation was opened and seemingly invited by Mrs. Burke. The statements of defendant conveyed no new knowledge to either Mrs. Burke or Mrs. Bradley as plaintiff has already told them of the letter and its contents. We must conclude that it was news to Mrs. Rice although plaintiff testified in a deposition that she had told Mrs. Rice of the laboratory report before August 25th.

Plaintiff maintains that the foregoing constituted sufficient publication of the slander to be actionable. The jury returned a verdict in favor of plaintiff for $3,000 and apparently agreed with this theory. However, after extended arguments the trial judge concluded that defendant was entitled to the protection of a qualified privilege in making the statements in so far as plaintiff, Mrs. Burke and Mrs. Bradley were concerned (Civ. Code, subd. 3, § 47) so that no implication of malice arose from them (Civ. Code, § 48); that there was no evidence of actual malice; that Mrs. Rice was a casual bystander so that, lacking proof of actual malice, there was no sufficient proof of publication to support the action for slander. The affirmance of the order and judgment rests on the soundness of these conclusions of the trial judge.

We must first examine the question of qualified privilege. One privileged communication is defined by subdivision 3 of section 47 of the Civil Code, as follows:

"In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

Section 48 of the same code, in effect in August, 1945, provided:

"In the cases provided for in subdivisions three, four, and five, of the preceding section, malice is not inferred from the communication or publication."

Plaintiff and defendant occupied the relation of physician and patient. It was the duty of defendant, as her physician, to treat plaintiff and to inform her of the ills from which he verily believed she was suffering. The letter written by him was addressed to plaintiff and truthfully conveyed to her the information given him by a reputable laboratory, which information he believed to be true. That the subject matter of this letter concerned a subject in which both parties were interested cannot be questioned. Therefore, it was privileged as to plaintiff. Further, the writing of this letter to the plaintiff was not a publication of its contents under the slander laws of this state. Its original publication was by plaintiff herself when she disclosed its contents to Mrs. Bradley, Mrs. Burke and Mrs. Burgomaster. As defendant had no part in this publication to them by plaintiff, he cannot be held responsible for it. (36 C.J. 1230.) However, this does not apply to the publication to Mrs. Rice, and we must further consider the question of qualified privilege.

The plaintiff was living in a small house with Mrs. Burke and Mrs. Bradley. The evidence indicates that the relationship between the three women resembled that of a family more than anything else. Certainly this was true of plaintiff and Mrs. Bradley, her mother. It is evident that plaintiff believed both women sufficiently interested in her condition so that she disclosed the contents of the letter to them. We believe that the only reasonable inference to be drawn from the evidence of plaintiff and her witnesses amply supports the conclusion that Mrs. Burke and Mrs. Bradley stood in such relation to plaintiff, and were persons interested in her, as to afford a reasonable ground for supposing that the motive for the communication made by defendant on August 25, 1945, was innocent; that such communication was qualifiedly privileged as to them and not actionable in the absence of proof of express malice. Further, in *Simonsen* v. *Swenson*, 104 Neb. 224 [177 N.W. 831, 9 A.L.R. 1250], it was held that the communication by a physician to the manager of a lodging house where a patient resided, to the effect that the patient was suffering from a venereal disease that was communicable to others, was qualifiedly privileged.

It is clear from the record that the conversation with defendant to which plaintiff now objects was opened by Mrs. Burke in the immediate presence and hearing of plaintiff. It shows that Mrs. Burke was familiar with the contents of the letter and desired to discuss it with defendant. Defendant evaded the subject (he says with the object of protecting plaintiff) until suit was threatened when he made the statement concerning the venereal disease and the report he had received from the laboratory which he believed to be true. Plaintiff at no time made any objection to the conversation nor did she attempt to stop Mrs. Burke in the evident attempt to invite defendant to discuss the contents of the letter. This silence of plaintiff is significant and would support the inference, if drawn, that Mrs. Burke was speaking for plaintiff, at least with her tacit consent or approval, and with the intent of causing defendant to discuss the contents of the letter and to disclose the disease from which he believed she was suffering. This might be construed as an implied consent of the patient to the disclosure of the nature of the disease by the doctor.

What we have last said, possibly might be construed as more applicable to an order granting a motion for new trial because of the insufficiency of the evidence to support the verdict and judgment, which easily could have been affirmed, than to an order granting the motion for judgment notwithstanding the verdict.

Consideration must be had of the bearing on the case of the statement of defendant made in the hearing of Mrs. Rice whom the evidence fails to disclose bore any close relationship to plaintiff or the defendant so that those statements would be privileged as to her. The evidence discloses that Mrs. Rice was a neighbor of plaintiff and a tenant of Mrs. Burke, living in one of two houses on the same lot; that Mrs. Rice walked in the back door at about the same time, or a few minutes after defendant entered the front door of the house; that neither plaintiff, Mrs. Burke nor Mrs. Bradley had invited her to come or knew that she intended to do so, but that all of them knew of her arrival. Defendant was positive in his testimony to the effect that he did not know of the presence of Mrs. Rice. It appears that Mrs. Rice was merely a casual bystander who overheard the remarks of defendant without any connivance on his part.

The case of *New York & Porto Rico S. S. Co.* v. *Garcia,* 16 F.2d 734, decided by the First Circuit Court of Appeals, in-

volved an action for damages by Dolores Carmoega Garcia because of a statement made by a physician to her to the effect that she had a venereal disease, which statement was overheard by casual bystanders. In holding the statement not actionable because of its being heard by third persons, it was said:

"From the foregoing authorities it appears that a communication of any matter in which the person making the communication has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, even though it contains matter which without this privilege would be actionable, and although the duty is a moral and not a legal one, and particularly where, as here, the communication arises out of and is incidental to a business relation between the parties; that an utterance, though false, may be thus privileged, and if made in the honest belief that it is true and from no malicious motive, is not actionable; that the occasion on which such a communication is made rebuts the presumption or inference of malice and casts the burden upon the plaintiff to prove that there was malice in fact; that it was not necessary in order to render the communication privileged, that it should have been in response to an inquiry made by the plaintiff; it is enough that it was made by one having a duty to perform to a person or persons having a like interest or duty in the subject-matter of the communication; and that the mere fact that third persons not legally interested in the communication are accidentally present and hear it, will not alone take the case out of the privilege if it were unavoidable or happened in the usual course of business affairs. *Kruse* v. *Rabe, supra* (80 N.J. Law, 378, 79 Atl. 316); Odgers on Libel & Slander, p. 245; 17 R.C.L. p. 344, Sec. 90."

The case of *Fahr* v. *Hayes,* 50 N.J.L. 275 [13 A. 261], is also of assistance. It was there said:

"It is true there were hearers who are not shown to have been lawfully interested, and that the defendant had an opportunity in his own office, of making the disclosure to Thoma without further publicity. But he was entitled, not merely to warn but to convince Thoma, of the danger of trusting the plaintiff and for this purpose he had a right to confront the plaintiff and there declare whatever was of itself within the privilege. The presence of bystanders at that meeting was a mere casual incident, not in any sense sought for by the defendant, and for which, therefore, he should not

be held responsible.'' (See, also, *O'Donnell* v. *Nee*, 86 F. 96; *Heller* v. *Howard*, 11 Ill.App. 554; *Shinglemeyer* v. *Wright*, 124 Mich. 230 [82 N.W. 887, 50 L.R.A. 129].)

We therefore conclude that as the statements of defendant were qualifiedly privileged as far as three of the hearers were concerned, and were overheard by Mrs. Rice who was merely a casual bystander for whose presence defendant was in no manner responsible, plaintiff cannot recover without proof of actual or express malice on the part of defendant. Under these circumstances the burden of proving such malice rests on the plaintiff. In *Emde* v. *San Joaquin County Central Labor Council*, 23 Cal.2d 146, at page 161 [143 P.2d 20, 150 A.L.R. 916], it is said:

''The communication being qualifiedly privileged, no right of action arose unless the publishers were actuated by malice, and malice 'is not inferred from the communication or publication.' (Civ. Code Sec. 48.)'' (See, also, *Davis* v. *Hearst*, 160 Cal. 143 [116 P. 530]; *Snively* v. *Record Publishing Co.*, 185 Cal. 565 [198 P. 1]; *Locke* v. *Mitchell*, 7 Cal.2d 599 [61 P.2d 922].)

The law places on a physician the duty of reporting the discovery of certain venereal diseases to the health department subject to penalties for failure or refusal to do so. (See Venereal Disease Law, Stats. 1937, p. 2248; Health & Saf. Code, §§ 2571, 2572, 2573.) There is evidence to the effect that a physician is required by rules of the board of health to report a case of venereal disease within 24 hours of its discovery; that if the infected patient takes and continues treatment, only the initials need be placed on the report, otherwise the name must be given.

There is nothing in the record to support a finding of actual or express malice on the part of defendant. He actually received a report from a reputable, established laboratory that plaintiff was actually suffering from a venereal disease. He believed, relied and acted upon this report. The fact that this report from the laboratory was a mistake, if such be true, cannot affect the question of actual malice if defendant believed it to be true and was actually acting on that belief and was proceeding without malice within the provisions of the Venereal Disease Law. In *Snively* v. *Record Publishing Co.*, *supra*, it was said:

''The occasion and the relations between the one making the charge and those to whom it is made being such that the

communication would be privileged, the right of the publisher to speak or write is complete and unqualified, under the code, except that he must speak or write 'without malice.' When under these conditions he honestly believes that the person of whom he speaks or writes is guilty of a crime of a nature that makes the fact material to the interests of those whom he addresses, it is as much his right and duty to declare to them that fact as it would be to tell them any other fact pertinent to the occasion and material to their interests. If the publisher of a newspaper honestly believes that a public officer has committed crime of a nature which would indicate that he is unfit for the office he holds, we think he is not liable for damages under the code in a civil action for libel when, without malice, and so believing, he publishes a statement to that effect to the community served by the officer.''

In the letter of August 23d, after informing plaintiff of the nature of her disease, defendant urged her to come to his office for further consultation. Mrs. Bradley received a similar request in the telephone message to the drugstore. Defendant testified that these requests were made with the idea of inducing plaintiff to take treatments so as to save her the embarrassment of having her name rather than her initials reported to the board of health. There is nothing in the record contradicting this testimony and the inferences from the entire record support it. Therefore, the conclusion is clear that instead of being actuated by any malice against plaintiff, defendant was endeavoring to protect her as much as possible from the effects of any publicity concerning the disease from which he believed she was suffering.

As the statements made on August 25, 1945, were qualifiedly privileged and as there is no proof of actual or express malice, plaintiff has failed to meet the burden of proof resting on her in this respect, and the evidence fails to support the case of plaintiff.

The order and judgment are affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied August 20, 1947, and appellant's petition for a hearing by the Supreme Court was denied September 18, 1947. Carter, J., and Traynor, J., voted for a hearing.