## STEPHENSON v. MARSHALL.
### No. A–7210.

District Court, Alaska.
Third Division, Anchorage.
April 28, 1952.

Davis & Renfrew and John C. Hughes, all of Anchorage, Alaska, for plaintiff.

McCutcheon & Nesbett, Anchorage, Alaska, for defendant.

FOLTA, District Judge.

This action, to recover damages for slander, is based on alleged defamatory

statements made by the defendant at meetings with the employees of the Alaska Airlines, Inc., held in Anchorage, Alaska, on August 30 and September 18, 1951. Until a short time prior thereto, the plaintiff, an experienced transport pilot, had been Vice President and General Manager of the company in charge of Alaska operations, with his office in Everett, Washington. The defendant was the Chairman of the Board and also the chief executive officer, with his office in New York City.

The plaintiff made withdrawal of funds for his travel and other expenses, as he was authorized to do, and deposited what he didn't carry on his person in a joint bank account with his wife. He became involved in a controversy with the accounting department and the defendant over his refusal to submit vouchers or accounts covering his withdrawals after February, 1951. Plaintiff testified that his refusal was based on the alleged failure or refusal of the accounting department to submit to him a statement of his account, itemized sufficiently to be susceptible of verification. It appears that although he received monthly statements, they showed only the balance carried forward and that plaintiff was unable to determine whether he had been credited in full in accordance with his accounts. The excess of debits over credits eventually reached a figure exceeding $7,000 and the defendant ordered the treasurer to hold up the delivery of the plaintiff's pay checks. Early in August, when the defendant came to Everett, there was a showdown between them. Upon the plaintiff's promise to submit his accounts and vouchers in a few days, his pay checks were delivered to him by the defendant. Following that, the defendant proceeded to Anchorage. The plaintiff did not submit his vouchers and accounts until September 19. In the meantime, on or about August 22, he was discharged by the defendant. The dismissal proved to be quite unpopular with the employees.

The company was experiencing financial and other difficulties and it was for the purpose of discussing the affairs and problems of the company that the defendant called a meeting of the pilots in the City Ticket Office in Anchorage on August 22 and a meeting of all employees on September 18 at the Pioneers' Hall. The first meeting was attended by 25 to 30 pilots, the defendant, officials of the company and a consultant who was engaged in making a survey of the operations of the company and who, during the meeting, commented on his findings. The second meeting was attended by 75 to 125 employees, including the spouses of two of the employees. At each meeting, the defendant was asked why he had discharged the plaintiff and at the second meeting he was also heckled by a pilot under the influence of liquor. The alleged defamatory statement was made in response to that question.

I find that the defendant answered in each instance that the plaintiff had taken $6,000 or $7,000 of the company funds and deposited them to his wife's account and refused to account for them, and that he had also, without any authorization, sold two of the company planes without accounting for the proceeds.

 Concededly, the occasions were privileged, but the plaintiff contends that the presence of the consultant at the first meeting and the spouses at the second, as well as the falsity of the statements, destroyed the privilege.

Libel and slander are defined by Sec. 65–4–28, A.C.L.A.1949, as any defamatory or slanderous matter spoken, written or in any other manner published, with intent to injure or defame. The statute further provides that truth is a defense only when the matter is uttered or published with good motives and for justifiable ends and that an injurious publication is presumed to have been malicious if no justifiable end or good motive is shown for making it.

 I am of the opinion that the consultant cannot be considered a stranger. It was to his interest, as a consultant engaged in making a survey of the operations of the company, to hear what the pilots had to say and, hence, conclude that the communication there made by the defendant was qualifiedly privileged. So far as the meeting at the Pioneers' Hall is concerned, I find that the defendant neither

procured the presence of the spouses nor knew of their presence. Indeed, it is doubtful whether he knew them. While it appears to be fairly well settled that a spouse is a third person so far as defamatory communications are concerned, Newell on Libel and Slander 4th ed., 230; Lesesne v. Willingham, D.C., 83 F.Supp. 918, I am inclined to the view that this rule is not applicable here because obviously the interest of the spouse of an employee is practically identical with that of the employee in any discussion, between management and employees, of problems affecting both. Cf. Shoemaker v. Friedberg, 80 Cal.App.2d 911, 183 P.2d 318; Conrad v. Roberts, 95 Kan. 180, 147 P. 795, L.R.A.1915E, 131, and hence conclude that the communication made there was also qualifiedly privileged.

The plaintiff, however, contends that the privilege was destroyed because the statement was false in that it imputed embezzlement or at least dishonesty.

It was established that the plaintiff had not accounted for withdrawals aggregating more than $7,000 and that he deposited these funds in a joint account with his wife. The defendant argues that it was true that the plaintiff had taken $6,000 or $7,000 without any accounting as well as sold two of the company airplanes without authorization and further argues that characterizing the joint bank account as that of the wife was immaterial.

■■ I cannot agree with this contention. In determining whether the statement was false, the several sentences of which it is composed may not be isolated from the context nor considered apart from the circumstances under which uttered or in disregard of facts known to the defendant. It may be conceded that a refusal to account for money "taken" may be interpreted as a mere dereliction, but it may also imply a criminal conversion. And, when it is followed by a summary dismissal from an important office, the nonfeasance takes on a different complexion and warrants the suspicion that there was a conversion. Here, in addition to the dismissal, there was the charge that the plaintiff had deposited the money to his wife's account. This certainly implies that thereafter it was beyond plaintiff's control and, therefore, a conversion. It appears that the defendant had no reasonable grounds for believing that the plaintiff had deposited this money to his wife's account. Whether the sale of the two airplanes was without authorization is in sharp conflict. Viewing the statement in its entirety and in the light of the attendant circumstances, I have no difficulty in finding that it was false in the respects pointed out, and that it imputed embezzlement. The circumstances under which it was made were mitigating, but the defendant went beyond the necessities of the case apparently in order to justify the dismissal of the plaintiff, and in doing so exceeded the privilege. This warrants the inference that the defendant was actuated by malice, Swift & Co. v. Gray, 9 Cir., 101 F.2d 976.

I find that the plaintiff has been damaged in the sum of $1,250. An attorney's fee of $350 is allowed.