[No. H017585. Sixth Dist. Jan. 8, 1999.]

MONTEREY PLAZA HOTEL, Plaintiff and Appellant, v.
HOTEL EMPLOYEES & RESTAURANT EMPLOYEES LOCAL 483 et
al., Defendants and Respondents.

1058

**COUNSEL**

Morrison & Foerster, Timothy F. Ryan, B. Scott Silverman, Janie F. Schulman and Mark I. Inaba for Plaintiff and Appellant.

Davis, Cowell & Bowe, Michael T. Anderson and Richard McCracken for Defendants and Respondents Hotel Employees & Restaurant Employees Local 483 and Maya Holmes.

Gold, Rotatori & Schwartz, Eugene Miller, Jennifer Schwartz and Robert J. Rotatori for Defendant and Respondent Hotel Employees & Restaurant Employees International, AFL-CIO.

## OPINION

**MIHARA, J.**—Plaintiff The Monterey Plaza Hotel appeals from a judgment in favor of defendants Hotel Employees & Restaurant Employees Local 483 (HERE), Hotel Employees and Restaurant Employees International, AFL-CIO, (HERE International), and Maya Holmes, after the trial court granted their special motion to strike plaintiff's defamation complaint. (Code Civ. Proc., § 425.16.)[1] Plaintiff contends that the trial court erred in striking its complaint, because it established a prima facie showing to support its claim. We affirm.

### *Statement of Facts*[2]

On June 21, 1995, HERE filed unfair labor practice charges with Region 32 of the National Labor Relations Board (NLRB) against plaintiff. After an administrative investigation, the regional director found merit in most of the union's charges and issued a complaint on September 29, 1995, on behalf of the general counsel. The complaint alleged plaintiff threatened employees with termination for union activity, threatened to report prounion employees to the Immigration and Naturalization Service, interrogated employees about union activity, created the impression of surveillance of union activities, and maintained an illegally restrictive policy against employee communications.

HERE had also charged that two housekeeping employees, Rosalia Vasquez and Susana Iglesias, had been fired for supporting it. The regional director dismissed this charge after concluding that Ms. Vasquez and Ms. Iglesias were supervisors who could be lawfully discharged for union activity. HERE then appealed from the regional director's dismissal to the NLRB General Counsel's Office of Appeals.

On February 14, 1996, the general counsel's office of appeals sustained HERE's appeal. The general counsel instructed the regional director to issue an amended complaint which charged plaintiff with illegally firing Ms. Vasquez and Ms. Iglesias.[3] On March 20, 1996, the regional director issued the amended complaint.

---

[1] All further statutory references are to the Code of Civil Procedure.

[2] The statement of facts is based on the parties' pleadings and declarations.

[3] The text of the notification to HERE's counsel states as follows: "Your appeal from the Regional Director's refusal to issue complaint in the above-captioned matter has been carefully considered. [¶] The appeal is sustained. It was concluded that the discharges of Rosalia [Vasquez] Rodriguez and Susan Iglesias raised issues warranting Board determination based on record testimony developed at a hearing before an Administrative Law Judge. [¶] Accordingly, the case is remanded to the Regional Director with instructions to issue an

On March 28, 1996, KCCN-TV 46 broadcast a news story about the labor dispute. KCCN Reporter Maleene Ozuna interviewed several people, including Ms. Holmes, one of the organizers for HERE. Ms. Holmes gave Ms. Ozuna a copy of the amended complaint and informed her that a hearing was scheduled for May 21, 1996.

The transcript of the newscast is as follows: "Teaser: [¶] Karina Rusk, News Anchor: Good evening, I'm Karina Rusk. Coming up on Central Coast News, a prestigious Monterey hotel faces escalating allegations and now the National Labor Relations Board is involved. [¶] News Piece: [¶] Rusk: Good evening. The Monterey Plaza Hotel may be facing charges of illegally firing two housekeeping employees. [¶] Ed Bradford, News anchor: A hearing before an administrative law judge is set for May 21st. Maleene Ozuna is now in the newsroom to tell us why many are anxious for the outcome of this. Maleene. [¶] Maleene Ozuna, KCCN Reporter: Ed and Karina, Rosalia Vasquez said she worked for the Monterey Plaza hotel for six years as a housekeeper and housekeeper supervisor, but in July 1995 she said she was illegally fired. [¶] Rosalia Vasquez (in Spanish and then translated by Ozuna): [¶] Ozuna: Rosalia says she and another employee were trying to make the workplace better by holding meetings at employees' homes and discussing their problems. A union official says when management got word of this organizing Rosalia and another employee were illegally fired. [¶] Maya Holmes, HERE Local 483 Research Analyst: They were simply exercising their very basic rights to, you know, decide whether or not they wanted to support a union and the Hotel's response was to fire them and the federal government has found that, you know, the firings were illegal. [¶] Ozuna: But the Hotel's general manager said Rosalia and the other employees were supervisors, classified as managers, and their actions were improper in accordance with the labor law. [¶] John Narigi, General Manager: To date we have been found guilty of nothing. [¶] Ozuna: But in an amended complaint filed by the National Labor Relations Board dated March 20, 1996, the Hotel has been charged in engaging in unfair labor practices. Reporting live in the newsroom, I am Maleene Ozuna. Ed and Karina, back to you. [¶] Bradford: Maleene, what is Rosalia Vasquez asking that the hotel do at this point? [¶] Ozuna: Well, she is asking for, of course, back pay, but she wants reinstatement. She says she wants her job back. In the six years that she worked for the Hotel she got seniority and she says since she was illegally fired she deserves to have all that back. [¶] Bradford: We shall see. Thank you Maleene."

Ms. Holmes has been employed as a representative and union organizer of HERE since 1994. Beginning in 1995, Ms. Holmes worked on HERE's

appropriate 8(a)(1) and (3) complaint, absent settlement. All further inquiries should be addressed to the Regional Director."

campaign to organize plaintiff's employees. While working on this campaign, she wrote several letters to plaintiff's potential clients. These letters indicate her understanding of the nature of the investigation by the NLRB.

Following the television broadcast, business associates of John Narigi, plaintiff's general manager, stated: "I hear that you were found guilty of firing employees," and "I saw that you fired some employees illegally." Plaintiff's sales staff also routinely responded to comments and questions regarding plaintiff's alleged wrongful conduct to employees. City officials questioned Mr. Narigi regarding plaintiff's "illegal actions" and the fact that plaintiff had been "found guilty" of firing employees. Plaintiff's customers canceled events and plaintiff claims a loss of potential business of approximately $1,635,339.

On May 21, 1996, plaintiff entered into a consent agreement with the general counsel to settle all items of the complaint against plaintiff except as to Ms. Vasquez and Ms. Iglesias. The general counsel then proceeded to prosecute the complaint before an administrative law judge regarding the terminations of Ms. Vasquez and Ms. Iglesias. On December 17, 1996, the administrative law judge issued a decision in which it held that Ms. Vasquez and Ms. Iglesias were supervisors who could be lawfully discharged for union activity.

On March 27, 1997, plaintiff filed a complaint alleging a single cause of action for defamation against Ms. Holmes, HERE, and HERE International. Plaintiff alleged that Ms. Holmes's statement that the federal government had found that the firings were illegal was false and exposed plaintiff to "hatred, contempt, and ridicule." Plaintiff also alleged Ms. Holmes's statement was made with malice.

On June 18, 1997, defendants filed a special motion to strike under section 425.16. The trial court granted the motion and stated: "It is clear that no reasonable person hearing that telecast would have considered that statement in full context as described by the Hotel. . . . The Court bases this judgment both on the written words and the videotape of the broadcast. It is quite clear that any reasonable person seeing the whole broadcast would have concluded that the federal government has through the General Counsel reversed the decision of the Regional Director, made a determination that the evidence was sufficient to issue a complaint, that the decision to issue a complaint was not a determination of actual guilt, and that a hearing as to the actual responsibilities under the law was scheduled at a later point in time."

## *Discussion*

### I. *Background*

██ SLAPP (Strategic Lawsuit Against Public Participation) suits have been defined by the sociologists who invented the term as " 'civil lawsuits . . . that are aimed at preventing citizens from exercising their political rights or punishing those who have done so.' [Citation.]" (*Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 815 [33 Cal.Rptr.2d 446].) "SLAPP suits are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citation.] Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. [Citation.] But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. [Citation.] As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. [Citation.]" (*Id.* at p. 816, italics omitted.)

In 1992, the Legislature enacted section 425.16 in response to the problem of SLAPP suits. Section 425.16 provides in relevant part: "(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly. [¶] (b) (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

### II. *Prima Facie Case*

██ Here defendants carried the initial burden of establishing a prima facie showing that plaintiff's complaint arose from their free speech activity.

(*Wilcox* v. *Superior Court, supra*, 27 Cal.App.4th 809, 820.) Defendants met this burden, because Ms. Holmes's statement was made during a major labor dispute in the community. The burden then shifted to plaintiff to establish " ' "a probability that the plaintiff will prevail on the claim" ' " of defamation, i.e., " 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.' [Citation.] In making its determination, the trial court is required to consider the pleadings and the supporting and opposing affidavits stating the facts upon which the liability or defense is based. [Citation.]" (*Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 646 [49 Cal.Rptr.2d 620].)

■ In cases involving section 425.16, an appellate court independently reviews the entire record to determine whether the plaintiff has made a sufficient prima facie case such that it would prevail in light of the applicable law regarding the complaint. (*Robertson* v. *Rodriguez* (1995) 36 Cal.App.4th 347, 357-358 [42 Cal.Rptr.2d 464].)

■ Plaintiff contends that the trial court erred in striking its complaint, because it made a prima facie showing to support its defamation claim. We disagree.

"Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which: [¶] . . . [¶] (3) Tends directly to injure [the plaintiff] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; [¶] . . . or [¶] (5) Which, by natural consequence, causes actual damage." (Civ. Code, § 46.)

■ "The *sine qua non* of recovery for defamation . . . is the existence of falsehood." (*Letter Carriers* v. *Austin* (1974) 418 U.S. 264, 283 [94 S.Ct. 2770, 2781, 41 L.Ed.2d 745].) In determining the falsity of a statement, "the context in which the statement was made must be considered. . . . [¶] This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed. [Citation.] ' "[T]he publication in question must be considered in its entirety; '[i]t may not be divided into segments and each portion treated as a separate unit.' [Citation.] It must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader [citations], and construed in the

light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning which may have been fairly presumed to have been conveyed to those who read it. [Citation.] If the publication so construed is not reasonably susceptible of a defamatory meaning and cannot be reasonably understood in the defamatory sense pleaded, the demurrer was properly sustained. [Citations.]" ' " (*Baker* v. *Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 261 [228 Cal.Rptr. 206, 721 P.2d 87].)

Moreover, "California courts early extended constitutional protection to statements relating to labor disputes so long as they are not made maliciously. [Citations.] The United States Supreme Court has acted in a similar vein. In *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53 [86 S.Ct. 657, 15 L.Ed.2d 582], the court applied the standard of *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412], formulated to protect statements made regarding public officials, to statements issued during labor controversies." (*Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600 [131 Cal.Rptr. 641, 552 P.2d 425].) This standard requires a determination of whether a statement was made " 'with knowledge that it was false or with reckless disregard of whether it was false or not.' " (*Ibid.*, quoting *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 280 [84 S.Ct. 710, 726, 11 L.Ed.2d 686, 95 A.L.R.2d 1412].)

Here plaintiff has failed to establish a prima facie case of slander in its pleadings and supporting declarations that defendants made a false statement with malice. Standing alone, Ms. Holmes's statement could have been construed as false, that is, that there had been a final adjudication that plaintiff had engaged in unfair labor practices. However, when the challenged statement is considered within the context of the entire broadcast, no reasonable viewer could have reasonably interpreted it in such a way. The teaser for the broadcast states that plaintiff is facing "escalating allegations" and that the NLRB is involved. The newscast begins with the statement that plaintiff *"may be facing charges* of illegally firing two housekeeping employees." Viewers are then informed that a hearing will be held in two months and that "many are anxious for the outcome of this." Thus, the television audience is repeatedly informed that plaintiff has been charged and a hearing will be held. After the fired employee explains her position, Ms. Holmes makes the allegedly slanderous comment that "the federal government has found that, you know, the firings were illegal." However, in response, the reporter gives plaintiff's position and plaintiff's general manager states: "To date we have been found guilty of nothing." The reporter again repeats that

the NLRB has filed an amended complaint in which it charges plaintiff with engaging in unfair labor practices. Thus, considering the broadcast as a whole, a viewer could not have reasonably understood Ms. Holmes's statement to mean that there had been a final determination that plaintiff had illegally fired the two employees. Accordingly, the trial court properly granted the motion to strike under section 425.16.

Plaintiff, however, relies on three cases to support its position that the broadcast could be reasonably understood as defamatory. We conclude these cases are factually distinguishable.

In *McNair* v. *Hearst Corporation* (9th Cir. 1974) 494 F.2d 1309, a newspaper published an article in which the headline and first two paragraphs indicated that an attorney had received an enormous sum in representing a woman in a divorce action. The issue was whether the entire article of 50 paragraphs on 3 pages would have eliminated this false impression. Focusing on the fact that what a newspaper regards as newsworthy is usually placed in the headline and beginning paragraphs, the reviewing court held that the issue was a question of fact for the jury and reversed the order granting the motion for summary judgment. In *Lundell Mfg.* v. *American Broadcasting Companies* (8th Cir. 1996) 98 F.3d 351, the reviewing court reversed an order setting aside a jury verdict in favor of the plaintiff. A television broadcast had reported that a garbage recycling machine " 'does not work' " (*Id.* at p. 354.) Though the defendant contended that the phrase referred only to the fact that the machine did not operate in a financially viable manner, the reviewing court relied on the fact that "the story, as a whole, never clarified the original statement that the machine 'does not work.' " (*Id.* at p. 360.) In *Draghetti* v. *Chmielewski* (1994) 416 Mass. 808 [626 N.E.2d 862], the reviewing court upheld a jury verdict that the defendant police chief was liable on a defamation claim. A newspaper article stated that the police chief had confirmed that allegations against the plaintiff were referred to the district attorney after being checked out by the police department. The article also stated that the plaintiff intended to collect pay for teaching while on duty as an officer. (*Id.* at p. 866.) The *Draghetti* court concluded the statements were "susceptible of a defamatory meaning." (*Id.* at p. 867.) In contrast to *McNair*, *Lundell*, and *Draghetti*, here the broadcast was significantly shorter and the information that clarified the allegedly slanderous statement was clearly and repeatedly provided to the television audience. Thus, no viewer in the instant case could have reasonably understood Ms. Holmes's statement in a defamatory sense.

## *Disposition*

The judgment is affirmed. Defendants shall recover their costs and attorney fees on appeal, the amount of which shall be determined by the trial court.

Bamattre-Manoukian, Acting, P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied February 4, 1999.