[No. A120493. First Dist., Div. One. Jan. 26, 2009.]

LEAH DIBLE, Plaintiff and Appellant, v.
HAIGHT ASHBURY FREE CLINICS, INC., et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of Julian T. Lastowski and Julian T. Lastowski for Plaintiff and Appellant.

The Davis Law Firm, Timothy C. Davis and Marguerite E. Meade for Defendants and Respondents.

**OPINION**

**FLINN, J.**[*]—Plaintiff Leah Dible, a former employee of defendant Haight Ashbury Free Clinics, Inc. (herein Haight), brings this action alleging,

---

[*]Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

amongst other things, defamation regarding the termination of her employment. She appeals from the granting of defendants' motion brought pursuant to the anti-SLAPP (strategic lawsuit against public participation) statute, Code of Civil Procedure section 425.16.[1] The trial court found that the alleged conduct arose from defendants' exercise of the right of free speech, passing to plaintiff the burden of establishing a likelihood of prevailing upon the merits. It then concluded that plaintiff could not establish such a likelihood and granted the motion.

We conclude that the trial court was correct as to the claim of defamation made by plaintiff's complaint, to wit, the publication to a third party of statements regarding the termination of her employment. On appeal she urges that statements made to her were themselves defamatory. While we accept that, if republished, such statements might fall outside of the scope of section 425.16, that claim would, as described below, not pass demurrer. Since a demurrer was timely filed, and further amendment would not be able to cure the defects, we find the failure to address the demurrer to be harmless error. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is engaged in the profession of psychotherapy/social work and was employed by defendant Haight from 1998 through October 2002, when she was involuntarily terminated. She was assigned to a division entitled "jail psychiatric services" and while working there as a psychiatric counselor, a jail inmate as to whom she had some level of responsibility committed suicide. Several meetings occurred regarding the failure to avoid the event and a dispute appears to have arisen between plaintiff and her employer as to fault. Plaintiff took the position that "managerial and institutional problems" were the cause, and not her conduct. When she was terminated, on October 16, 2002, she alleges that she was told that her negligence had resulted in the death. She states that statements to this effect were made to the Employment Development Department of the State of California (EDD) in relation to her unemployment insurance claim.

An original complaint, filed on October 10, 2003, was amended on March 2, 2004. That first amended complaint was the operational pleading at the time of the motion which is the subject of this appeal. It alleges causes of

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise stated.

action for wrongful termination, declaratory relief, defamation, interference with business opportunity, and unfair business practices. The gravamen of the complaint is that she was wrongfully terminated for the "false reason" that she was responsible for the suicide and that defendants "defamed her" by advising EDD, in response to her unemployment insurance claim, that she "held a license and/or was responsible for the inmate's death."

Defendants, in response to the first amended complaint, demurred to all causes of action, and the trial court sustained the demurrer in its entirety. On an earlier appeal to this court, the trial court's decision was upheld upon all causes of action other than defamation. As to defamation, the matter was remanded to allow amendment.[2]

Plaintiff did not attempt to amend her first amended complaint and, after waiting for some time for her to do so, defendants filed another demurrer (to the defamation cause of action) and a new anti-SLAPP motion. The trial court issued its tentative ruling, which granted the anti-SLAPP motion, counsel for plaintiff did not appear and contest the tentative ruling, and thus the motion was granted.

On September 10, 2007, the court issued its written order granting the motion and providing that defendants could request attorney fees by separate motion.[3] It also issued a separate order finding defendants' "[d]emurrer to the First Amended Complaint [to be] moot." Judgment was entered on November 26, 2007, and this appeal timely filed.

## STANDARD FOR REVIEW

As both parties recognize, an appeal from an order granting a motion made pursuant to section 425.16 is subject to de novo review by this court. We independently review the issue of whether defendants have established that the conduct which is the subject of the complaint falls within the ambit of the statute, i.e., arises from acts by defendants in furtherance of their right of petition or free speech. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809,

---

[2] Defendants had additionally filed an anti-SLAPP motion, which had been denied as moot. This court held that it should have been heard and remanded on that basis as well.

[3] After judgment defendants did file a motion for fees and costs, which were awarded by an order entered on March 20, 2008. Plaintiff has filed a timely appeal from that motion which is separately docketed (*Dible v. Haight Ashbury Free Clinics, Inc.* (A121629, app. pending)) and will be dealt with in the separate appeal only.

819 [33 Cal.Rptr.2d 446] (*Wilcox*), disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) We also independently review whether plaintiff can establish a probability of prevailing upon her claims, that is, has made a sufficient prima facie case such that she would prevail in light of the applicable law regarding the complaint. (*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064 [82 Cal.Rptr.2d 10].)

## DISCUSSION

### 1. *Application of statute.*

As our Supreme Court indicated in *Equilon, supra*, 29 Cal.4th at page 67, "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " In our de novo review we are to independently engage in the same analysis.

### 2. *First step: Whether complaint alleges a protected activity.*

As was stated in *Wilcox, supra*, 27 Cal.App.4th at page 819, "[S]ection 425.16 does not apply in every case where the defendant may be able to raise a First Amendment defense to a cause of action." In *Equilon, supra*, 29 Cal.4th at page 66, we are cautioned that " ' "the act underlying the plaintiff's cause," or "the act which forms the basis for the plaintiff's cause of action," must *itself* have been an act in furtherance of the right of petition or free speech.' "

Helpfully, the statute itself gives definition to the protected activity: "(e) As used in this section, 'act in furtherance of a person's right of petition or free

speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

It is the principal thrust of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies, and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494] (*Martinez*).)

The preliminary inquiry in an action like that before us is to determine exactly what act of the defendant is being challenged by the plaintiff. In doing so we review primarily the complaint, but also papers filed in opposition to the motion to the extent that they might give meaning to the words in the complaint. (§ 425.16, subd. (b); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Martinez, supra,* 113 Cal.App.4th at p. 186.)

Paragraph 9 of plaintiff's first amended complaint alleges that "EMPLOYER violated Unemployment Insurance Code, section 2101, subdivision (a) in attempting to deny her benefits and to justify its wrongful termination by falsely representing to the Employment Development Department of the State of California that she held a license and/or was responsible for the inmate's death, said statements being defamatory *per se*." Further, plaintiff provides in paragraph 24 of the first amended complaint that "[p]laintiff is informed and believes that within the last year, at least on one occasion either in writing or by words, EMLOYER uttered in a non privileged setting, false and defamatory comments either directly stated or clearly imputing that she was responsible for the death of an inmate at the San Francisco County Jail Facility to the Department of Employment Development of the State of California . . . ."

We find from plaintiff's declaration filed in opposition to dismissal that she learned of these "false and defamatory comments" when she received a telephone call from a case worker at EDD, who told her that the employer was contesting and was saying "that I was a licensed clinician whose neglicence [*sic*] caused the death of a[n] inmate."

■ These statements unequivocally establish that the alleged communication by defendant employer was part of an "official proceeding." They certainly qualify as statements made "before a legislative, executive, or judicial proceeding, or any other official proceeding" (§ 425.16, subd. (e)(1)) or made "in connection with an issue under consideration or review" by such (§ 425.16, subd. (e)(2)). These subsections have been broadly construed. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 203 [46 Cal.Rptr.3d 41, 138 P.3d 193] [hospital peer review actions]; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1399 [53 Cal.Rptr.3d 647] [university employee grievance investigation]; *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 728 [77 Cal.Rptr.2d 1], disapproved on other grounds in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*) [preparer of environmental impact report].) They extend to communications *before* official proceedings (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 781 [54 Cal.Rptr.2d 830] [prelitigation letter]) and do not require that the topic be of public interest (*Briggs*, at p. 1114).

The decision in *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 [28 Cal.Rptr.3d 833] is very much on point. As in this action, Fontani had been discharged by the defendant employer, claimed the discharge to be wrongful, and by his complaint claimed, amongst other things, defamation when the employer provided its version of the discharge to the National Association of Securities Dealers. (*Id.* at pp. 725–726.) The employer had indicated, on a standard form, that the termination occurred for " 'violation of company policies by misrepresenting information in the sale of annuities, not being properly registered and firm procedures regarding annuity applications.' " (*Id.* at p. 726, fn. omitted.) Fontani claimed that the true reason for his discharge was that he "complained to higher-ups about supposedly unlawful sales practices." (*Id.* at p. 725.) The *Fontani* court held that Wells Fargo had established the first prong to support a motion pursuant to section 425.16. (129 Cal.App.4th at p. 728.)

■ Plaintiff suggests that defendants' motivations were not solely to avoid her receiving unemployment compensation, but were "intended to silence me or to discredit me if there were any investigations and were motivated by a desire to deflect responsibility as an institution for the death of Inmate by keeping me away from any investigation since I asked about the managerial/institutional problems which caused the death." Even if that allegation is true, it is irrelevant to the determination of its status as protected speech. If the actionable communication fits within the definition contained in the statute, the motive of the communicator does not matter. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 22 [43 Cal.Rptr.2d 350].) Even if plaintiff's claim of intent is correct, it simply further establishes her claim as one covered by the statute since "institutional problems" at the county jail are clearly matters of public concern. (§ 425.16, subd. (e)(4).)

■ It is the claim of plaintiff that the EDD communication is merely "collateral" in that its real effect is to require her to republish the claim should she apply for a new position. While we find no appellate authority upon the issue of whether republication of a communication otherwise qualifying for section 425.16 protection loses the protection, in this instance we need not reach that question because there has been no republication. A defamation action does not exist, of course, for a statement that one *might* make in the future.

*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388 [126 Cal.Rptr.2d 560] (*Gallimore*), cited by plaintiff, is not of assistance. In that action Gallimore brought an action under the unfair business practices law (Bus. & Prof. Code, § 17200 et seq.) seeking to enjoin improper handling of claims following the Northridge earthquake, as well as requiring restitution or disgorgement. Certain investigations by the Department of Insurance were cited as evidence of the improprieties and State Farm sought to dismiss the action under section 425.16. (*Gallimore*, at pp. 1392–1393.) The motion was rejected because the acts that were the subject of the claim were not the communications to the department but, rather, the practices themselves. (*Id.* at pp. 1393–1394.) Thus, the statements made were only "collateral" to the noncommunicative wrongful acts. (*Id.* at pp. 1399–1400.)

Similarly, in *Martinez, supra*, 113 Cal.App.4th 181, the plaintiffs sued for personal injuries to Mrs. Martinez caused by the effects from her taking Metabolife 356, a pharmaceutical. (*Id.* at p. 184.) In their complaint they referred to numerous instances of what they contended was false and misleading labeling and advertising. (*Id.* at p. 185.) In denying an anti-

SLAPP motion, the court pointed out that these communications were largely unrelated to and entirely distinct from the injury-causing conduct, i.e., the manufacture of a defective product. (*Id.* at p. 191.)

Here, any acts to which the otherwise protected statements relate have been disposed of by earlier demurrer in the action, and plaintiff's sole claim is for defamation. The statements made do not, therefore, fall within any exception and the trial court correctly found them to be protected speech.

3. *Second step: Probability of prevailing.*

We are hampered in our analysis of the likelihood of plaintiff prevailing by her failure, since the earlier appeal, to file either an amended complaint or a further declaration. Rather, she chooses to rely upon her first amended complaint, which we found to be defective, and the declaration that she filed in response to the original 2004 anti-SLAPP motion. As we indicated in ruling upon the first appeal, her complaint failed to identify the words constituting the alleged libel or to explain how it imputed to plaintiff responsibility for an inmate's death. It further fails to indicate how and when it may have been republished.

To make things more difficult, in plaintiff's August 7, 2007 opposition to the motion to strike she describes her claim, although it is now limited to defamation, as follows: "If the lawsuit arose because of the statements made to EDD, Defendant's motion might have some merit, but the action is based on violation of other fundamental rights of Plaintiff. The claim that as a matter of law Plaintiff's cause of action is based upon statements made in connection with an official proceeding authorized by law, is not supported by allegations in the complaint. The statements made to EDD merely showed Defendants' bad faith and violation of law. They are not the basis of the lawsuit. The wrongful termination, the lying, the attempt to deny Plaintiff her unemployment benefits and the continued 'self-publication' do not impact any First Amendment rights." In this light we simply must analyze, as best we can, the only communications of which we have been made aware by the record.

(i) *The EDD communication.*

The first amended complaint alleges, on information and belief, that the alleged defamatory matter was "either in writing or by words" and that it was "either directly stated or clearly imput[ed]" that plaintiff was responsible for the inmate's death. We do know that plaintiff's claim to unemployment benefits was contested by defendant Haight. In this regard one document is made available to us, a fax transmittal of October 2002, which purports to report from defendants to a representative of EDD this "summary":

"1) Leah is a licensed MFT. As a licensed clinician she was responsible for treatment of inmates in the City & County Jail system. Her clinical decisions were bound by written policies and procedures, which she was trained on.

"2) Leah chose to ignore policy and allowed an inmate on suicide watch not to wear a modesty garment and to have a blanket and sheet.

"3) This inmate had a documented history of serious suicide attempts during previous incarcerations, which she knew.

"4) The inmate hanged himself to death with his sheet."

The two facts that plaintiff appears to claim are untrue are (1) that she is or was a "licensed MFT" and (2) that she "chose to ignore policy." Had EDD concluded from this information that plaintiff was not entitled to unemployment benefits, a cause of action for damages could most surely be stated. However, EDD did the opposite. Within a few weeks of receiving the information, EDD sent to the parties a notice that it found plaintiff *eligible* for benefits because "the reasons for . . . discharge did not meet the definition of misconduct connected with her work." Plaintiff presents us with no evidence of any further action or republication by EDD.

Based upon the failure to amend her pleading, and specifically the inability to establish that any damage occurred, we conclude that plaintiff has not met her burden of proof as to the merits of her claim relating to defendants' communication to EDD.

### (ii) *The communication to plaintiff.*

We are provided with even less specificity as to communications to plaintiff. While her complaint alleges that she was told " '[t]here will be no discussion,' " her 2004 declaration indicates that a supervisor "told me directly that it had been decided to terminate my employment based on negligence that resulted in the death of an inmate." We might assume from these limited facts that it can be established the speaker's intention was to accuse plaintiff of wrongdoing in a situation where she was being knowingly falsely accused. We might even assume, although such a statement appears to be more a statement of opinion as to fault than a statement of fact, that it is actionable. (See *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1606–1607 [284 Cal.Rptr. 244].) Likewise, we can assume that this statement has a natural tendency to harm such that it is slander per se (Civ. Code, § 46). We even assume, as indicated by our opinion in the earlier appeal, that plaintiff can establish malice. Nonetheless, there is missing the element of *publication*.

■ To establish a claim plaintiff must establish a false and unprivileged *publication* (Civ. Code, § 46), which means "communication to some third person who understands the defamatory meaning of the statement." (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637 [85 Cal.Rptr.2d 397]; *Cunningham v. Simpson* (1969) 1 Cal.3d 301, 306–307 [81 Cal.Rptr. 855, 461 P.2d 39] (*Cunningham*).) While the slanderous statement in *Cunningham* was made directly to the plaintiff, because a third person was present the court found publication. (*Ibid.*) Here, we have no evidence of the presence of a third person.

Plaintiff, appearing to recognize that publication is a necessary element for a defamation claim, contends that the possibility of her "republishing" the statement makes it actionable. In doing so she relies upon the decision in *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787 [168 Cal.Rptr. 89] (*McKinney*), a case of first impression that addressed facts similar to those alleged by plaintiff here. In *McKinney*, the plaintiff argued that "having given allegedly false reasons to appellant for his dismissal, it must have been foreseeable to respondents that appellant would be under a strong compulsion[4] to republish the statements to prospective employers upon their inquiry." (*Id.* at p. 795.) Relying upon the rule that ordinarily the originator of defamatory material is also liable for each such repetition if he could reasonably have foreseen the repetition (*Di Giorgio Corp. v. Valley Labor Citizen* (1968) 260 Cal.App.2d 268, 273 [67 Cal.Rptr. 82]), the *McKinney* court held, on a summary judgment motion basis,[5] that two republications that had been stated to third parties were "foreseeable" and thus the defendant could be liable for them. (*McKinney*, at p. 797.) The court created an exception from the rule of *Shoemaker v. Friedberg* (1947) 80 Cal.App.2d 911 [183 P.2d 318] that a person defamed who voluntarily discloses cannot recover, finding it appropriate to have an exception where the party defamed would have a "strong compulsion" to disclose. (*McKinney*, at p. 796.)

Applying the *McKinney* rule of compulsory self-publication here (*McKinney, supra*, 110 Cal.App.3d at p. 795), we see that the missing element in the instant case is the lack of *any* republication. California cases that have discussed the exception created in *McKinney* have uniformly

---

[4] The concept of "strong compulsion" was further defined, and the theory limited, in *Davis v. Consolidated Freightways* (1994) 29 Cal.App.4th 354 [34 Cal.Rptr.2d 438]. In that action the plaintiff was accused of stealing a jacket and himself published the incident and circumstances to numerous persons and then sought damages when he could not find other employment. (*Id.* at p. 372.) Finding that Consolidated Freightways had not given any "negative job reference," the court found no compulsion or necessity and upheld summary judgment in the defendant's favor. (*Id.* at p. 373.)

[5] The motion was actually filed as a motion to dismiss with declarations, but the appellate court recognized that section 437c was the applicable procedural basis. (*McKinney, supra*, 110 Cal.App.3d at p. 793.)

involved an actual republication. (*Mitchell v. Superior Court* (1984) 37 Cal.3d 268, 281 [208 Cal.Rptr. 152, 690 P.2d 625] [journalist to publisher Readers' Digest]; *Davis v. Consolidated Freightways, supra*, 29 Cal.App.4th at p. 373 [plaintiff to fellow employees who also published]; *Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 497 [100 Cal.Rptr.2d 905] [plaintiff to other homeowners at association meeting]; *Schneider v. United Airlines, Inc.* (1989) 208 Cal.App.3d 71, 74 [256 Cal.Rptr. 71] [credit bureau to the plaintiff's bank].) Likewise, courts in several other states have followed the *McKinney* rule of exception and each, too, involved an actual republication. (*Churchey v. Adolph Coors Co.* (Colo. 1988) 759 P.2d 1336, 1344 [fired employee to potential employers]; *Lewis v. Equitable Life Assur. Soc.* (Minn. 1986) 389 N.W.2d 876, 886 [terminated employees to potential employers]; *Belcher v. Little* (Iowa 1982) 315 N.W.2d 734, 736 [former wife in slander of title case to her bank].)

Cases relied upon by the *McKinney* court (*McKinney, supra*, 110 Cal.App.3d 787) for its ruling involved republication as well. In both *Hedgepeth v. Coleman* (1922) 183 N.C. 309 [111 S.E. 517, 518] and *Davis v. Retail Stores, Inc.* (1937) 211 N.C. 551 [191 S.E. 33, 34], young boys who received letters accusing them of theft republished by showing the letters to family members. In *Bretz v. Mayer* (1963) 1 Ohio Misc. 59 [30 Ohio Op.2d 361, 203 N.E.2d 665], the former pastor of a church received an accusatory letter with threats and republished it to the members of a group forming a new congregation with him. (203 N.E.2d at pp. 667–668.) In *Colonial Stores Inc. v. Barrett* (1946) 73 Ga.App. 839, 840 [38 S.E.2d 306, 307–308], a terminated employee republished his "certificate of availability," which showed his termination as " 'improper conduct toward fellow employees,' " to future prospective employers.

Here we are clearly being asked to create a wider exception for claimants who have not republished where it is foreseeable that they might do so in the future. We decline to do so. Such a rule would require courts to engage in considerable speculation as to future conduct and lead to untenable attempts to speculate on future damage. A court could not, for instance, account for the possibility that after a plaintiff has received an award for damages in the form of lost future wages, he or she might republish while seeking a job and be given the job, thus not be damaged, nonetheless.

Since publication or republication to a third person is necessary to establish the cause of action of defamation, we conclude that plaintiff cannot establish a probability of success upon her defamation claim. The motion pursuant to section 425.16 was therefore properly granted.

## DISPOSITION

The judgment in favor of defendants is affirmed.

Marchiano, P. J., and Margulies, J., concurred.